FASS *v.* CITY OF HIGHLAND PARK.

1. MUNICIPAL CORPORATIONS—ZONING ORDINANCE—PROHIBITED USES
—SALE OF LIVE POULTRY.
Where zoning ordinance expressly forbids use of premises with-
in a designated district for any purpose or purposes not speci-
fied in the ordinance therefor, and the sale of live poultry
cannot be regarded as accessory to specifically permitted use
of the operation of "generally recognized retail stores," since
it is not the practice of such stores to sell live poultry, such
use is regarded as expressly prohibited by the ordinance
(Highland Park Zoning Ordinance No 592, § 8).

2. SAME—CONSTRUCTION OF ORDINANCES.
Where the language of a municipal ordinance makes its mean-
ing obscure, it is the duty of the courts to construe, giving
it a reasonable and sensible interpretation; but where the
language is clear and unambiguous, it is only for the courts
to obey and enforce it.

3. SAME—LIMITATIONS ON POWERS OF AGENTS—NOTICE—ESTOPPEL.
All persons dealing with municipalities and their agents act
with constructive, if not actual, knowledge of the limitations
upon the powers of cities and their instrumentalities and
therefore cannot be considered to have been deceived or
misled by acts when done without legal authority.

REFERENCES FOR POINTS IN HEADNOTES
[1] 58 Am Jur, Zoning, § 108.
[2] 37 Am Jur, Municipal Corporations, § 187; 58 Am Jur, Zoning,
§ 11.
[3–7] 38 Am Jur, Municipal Corporations, §§ 668, 669.
[4, 5, 7] 37 Am Jur, Municipal Corporations, § 200; 58 Am Jur,
Zoning, § 192.
[4, 5, 7] Right of municipality or other public authority to enforce
zoning or fire limit regulations as affected by its previous con-
duct in permitting or encouraging violation thereof.   119 ALR
1511.

4. SAME—ZONING—ENFORCEMENT—OFFICERS—ESTOPPEL.

A municipality is not precluded from enforcing a zoning regulation by the fact that its officers have exceeded their powers in issuing a permit contravening the terms of such regulation, notwithstanding the permit holder has proceeded thereunder to his detriment before the municipality seeks to enforce the regulation against him.

5. SAME—ZONING—ILLEGAL PERMITS—ESTOPPEL.

A permit issued under the zoning ordinance without the official power to grant it does not, under any principle of estoppel, prevent the permit from being unlawful nor from being denounced by the municipality because of its illegality.

6. SAME—ORDINANCES—OFFICERS—ENFORCEMENT—WAIVER—ESTOPPEL.

An ordinance of a municipality when once legally adopted becomes binding upon all the citizens thereof, officers as well as private citizens, and it is the sworn duty of those officers, charged with its enforcement, to prosecute all violations thereof, such duty not being a personal one that can be waived, nor may they be estopped by any action of theirs from the faithful performance thereof.

7. SAME—ZONING—SALE OF LIVE POULTRY—BUILDING PERMIT—LICENSES—ESTOPPEL.

Under zoning ordinance expressly prohibiting the sale of live poultry within a district in which plaintiffs' premises were located, the fact that a building permit was issued, which made no reference to the killing, defeathering or dressing of poultry, and which use the board of zoning appeals indicated was not a permissible use of the building they permitted plaintiffs to erect, and that plaintiffs were licensed for three years to so use their premises, would not bar the city from thereafter enforcing its ordinance, as plaintiffs may not acquire a vested right to use their property in a manner forbidden by law (Highland Park Zoning Ordinance No 592, § 8).

Appeal from Wayne; Brennan (John V.), J. Submitted June 15, 1949. (Docket No. 57, Calendar No. 44,478.) Decided October 10, 1949.

Bill by Max Fass and wife against City of Highland Park and others for mandatory injunction com-

pelling issuance of meat license.  Bill dismissed on motion.  Plaintiffs appeal.  Affirmed.

*Thomas F. Chawke,* for plaintiffs.

*Earl B. Young (Crawford S. Reilley,* of counsel), for defendants.

CARR, J.  The bill of complaint in this case was filed on July 16, 1948, for the purpose of obtaining injunctive relief against the defendants.  Said bill alleged that the plaintiffs were the owners of real property in the city of Highland Park which, under the zoning ordinance of the city, was located in a "B2" district; that during the years 1945, 1946, and 1947, licenses were issued to the plaintiffs under the provisions of a city ordinance relating to the sale of meat at retail, authorizing them to sell both dressed and live poultry on said premises; that on the 30th of June, 1948, plaintiff Mina Fass made application for renewal of such license; that said application was denied by defendants on the ground that under the provisions of the zoning ordinance (Ordinance 592, effective October 1, 1942), as amended, the premises could not lawfully be used for the sale of live poultry.  The bill of complaint avers that the refusal to renew the license was arbitrary and unreasonable.

It is the theory of the plaintiffs, as set forth in their bill of complaint, that under the ordinances of the city, properly construed, they were entitled to the renewal of the license, and that in any event the defendants were estopped to insist that the building ordinance does not permit the sale of live poultry at the location in question.  Plaintiffs asked in the bill of complaint that defendants be restrained from interfering with them in the conduct of their business, and that a mandatory injunction issue requir-

ing the granting of a license in accordance with the application.

Defendants filed answer to the bill of complaint, and, also, made a motion to dismiss on the ground that under the allegations of fact set forth by plaintiffs they were not entitled to the relief sought. The trial court denied a petition for a temporary injunction requested by the plaintiffs; and granted the motion to dismiss. A decree was entered accordingly, and plaintiffs have appealed.

The parties have been involved in previous litigation, which was before this Court in *Fass* v. *City of Highland Park*, 320 Mich 182, and, on rehearing, 321 Mich 156. In that case plaintiffs sought to enjoin defendant municipality and the city engineer from interfering with them in the killing, defeathering, and dressing of poultry on the same premises that are involved in the instant suit. The trial court entered a decree in plaintiffs' favor, restraining the defendants as prayed in the bill of complaint, and also requiring the issuance of a license to them for the conduct of said business, subject to limitations as to the number of chickens or other poultry that could be kept or killed on the premises each day. Following the rehearing in this Court, a decree was entered reversing the action of the trial court and declaring that the provisions of the zoning ordinance involved in the case were constitutional. The decree further set forth that under said ordinance the killing, defeathering, and dressing of poultry was limited to locations in a "C" district, and was not permitted in the district in which plaintiffs' property was located.

The final decree of this Court in the case above referred to was entered on the 17th of June, 1948. Immediately thereafter and under date of July 7, 1948, the common council of defendant city adopted an amendment to Ordinance 520, providing for the li-

censing of the sale of meats, poultry and fish, in such manner as to classify the sale of dressed poultry with the sale of fish, fresh meats, smoked meats, and cooked meat food products, at retail, and to include the selling of live poultry with the killing and dressing of poultry. The trial court, in granting defendants' motion to dismiss in the instant case, indicated that the amended meat ordinance and the zoning ordinance should be construed together insofar as the sale of dressed poultry within the defendant city was concerned. The trial judge further concluded, as appears from his opinion, that the zoning ordinance did not authorize or permit the sale of live poultry in a "B2" district.

Following the determination in this Court of the litigation above referred to and the amendment of the so-called meat ordinance of the city, plaintiffs' application for a renewal of their license to sell both live and dressed poultry in their place of business was denied. Such action was taken on the recommendation of the city attorney, for the reason that the ordinance did not permit the use of premises in the "B2" district for the sale of live poultry. Thereupon the present suit was instituted.

The first question presented for consideration is whether the trial court was correct in his interpretation of the zoning ordinance. Plaintiffs insist that there is nothing in the provisions of such ordinance relating to the use of property in "B2" districts that precludes the sale of live poultry therein. The pertinent provisions of the ordinance are as follows:

"Section 8.    B2 districts

"The following regulations shall apply in all B2 districts:

"Sec. 8.1    Uses permitted

"No building, structure, or part thereof, shall be erected, altered, or used, or premises used, in whole

or in part, for other than one or more of the following specified uses:    *    *    *

"2. Generally recognized retail stores.    *    *    *

"17. Uses accessory to any of the above permitted uses.    *    *    *

"Section 10. C districts

"The following regulations shall apply in all C districts:

"Sec. 10.1 Uses permitted

"No building, or structure, or part thereof, shall be erected, altered, or used, or premises used, in whole or in part, for other than one or more of the following specified uses:    *    *    *

"5. Facilities for the handling and sale of poultry or game, including storage and killing of same, for sale on the premises exclusively at retail, such use to be subject to the approval of the board.

"6. Uses accessory to any of the above permitted uses."

It will be noted that the language of the ordinance with reference to uses permitted in "B2" districts expressly forbids the use of premises in any such district for a purpose or purposes not specified. The sale of live poultry cannot be regarded as accessory to the operation of "generally recognized retail stores." We do not understand plaintiffs to contend that such stores, as a matter of general practice, sell live poultry. The conclusion cannot be avoided that none of the specified purposes for which property in "B2" districts may be used includes the business of handling live poultry. Such being the case, the use in question must be regarded as expressly prohibited by the language of the ordinance, above quoted. It is further significant that such an operation is expressly sanctioned in "C" districts. The language of the ordinance is not ambiguous and indicates clearly an intent to define with care the rights of property owners in the various districts within the city. The trial court was cor-

rect in construing the ordinance in accordance with its specific terms. In *Crary* v. *Marquette Circuit Judge,* 197 Mich 452, it was said:

"Where the language of a statute makes its meaning obscure, it is the duty of the courts to construe, giving it a reasonable and sensible interpretation; but where the language is clear and unambiguous, it is only for the courts to obey and enforce it."

See, also, *Boyer-Campbell Co.* v. *Fry,* 271 Mich 282 (98 ALR 827); *Schuhknecht* v. *State Plumbing Board,* 277 Mich 183; *Rudolph Wurlitzer Co.* v. *State Board of Tax Administration,* 281 Mich 558.

Plaintiffs' claim of estoppel, as set forth in their bill of complaint, is predicated on the interpretation placed on the zoning ordinance, in past years, by certain city officials. It is alleged that on or about the 1st of March, 1943, plaintiffs entered into a contract to purchase the property in question in reliance on statements made by the city engineer to the effect that there was no objection on the part of the city to the operation of a retail live poultry market, including the killing and dressing of poultry ·on the premises. Subsequently they were advised that the killing, defeathering, and dressing of poultry on the premises was not permissible. In April, 1945, they made application to the city engineer for a permit to construct a building on said property for the sale at retail of dressed and live poultry. The board of zoning appeals of defendant city advised the engineer that such use was permissible but that it did not include the killing of poultry. In accordance with such opinion the permit was granted and plaintiffs constructed their building. They alleged that their total investment, including equipment and fixtures, was approximately $18,000, and that they will suffer loss in the value of their property unless permitted to carry on the business of selling live

poultry. No claim is made that the property cannot be used for business purposes in accordance with the ordinances of the city.

In support of their claim of estoppel, plaintiffs cite *Sandenburgh* v. *Michigamme Oil Co.*, 249 Mich 372. There a permit for the construction of business property was issued in accordance with a zoning ordinance then in effect. Substantial work was done thereunder. It was held that the city was precluded from revoking such permit and later amending the ordinance with reference solely to the property in question, thus attempting to give the amendment a retroactive effect. It was also held that, because of the adoption of a zoning ordinance which placed the property in a business district, the plaintiffs in the case could not rely on a prior agreement with reference to setback lines and driveways.

The question of the retroactive operation of such an ordinance was likewise involved in *Adams* v. *Kalamazoo Ice & Fuel Co.*, 245 Mich 261. See, also, *City of Lansing* v. *Dawley*, 247 Mich 394, in which an injunction granted by the trial court to the plaintiff city was sustained on the ground that the defendant, to whom a valid permit for the construction of an apartment house had been issued before the enactment of the zoning ordinance on which the plaintiff relied, had not proceeded with the construction of the new building until approximately 3 months after the ordinance became effective. It was held in consequence that his permit did not give him any vested right to proceed with the construction of the proposed building in violation of the ordinance. *City of Coldwater* v. *Williams Oil Co.*, 288 Mich 140, is also cited by plaintiffs. It was there held that "The ordinance, enacted after legitimate use of the premises for a gasoline filling station was actually commenced, may not be given retroactive effect."

In the case at bar we are confronted with a different situation than was involved in any of the decisions above cited. We are not here concerned with the possible retroactive operation of a municipal ordinance relating to the use of property. The zoning ordinance of defendant city was in force and effect at the time plaintiffs purchased their real estate and erected the building thereon. Plaintiffs claim that they relied on the interpretation of that ordinance by the board of zoning appeals and the issuance of the building permit in accordance with such interpretation. The question, therefore, is whether defendants are estopped to enforce the ordinance as properly construed because of the erroneous opinion of certain administrative officials of the city in prior years.

In *Building Commission of the City of Detroit* v. *Kunin,* 181 Mich 604 (Ann Cas 1916C 959), this Court affirmed a decree of the trial court granting an injunction to restrain a violation of the municipal building code. In so doing the opinion of the trial court was adopted. The defendants in the case relied on the claim of estoppel. Commenting thereon it was said by the trial judge:

"What, then, is the situation of the defendants? They procured a permit which had no legal status, since no such authorization is warranted by the ordinance. The defendants must be held to have had notice of this. All persons dealing with municipalities and their agents act with constructive, if not actual, knowledge of the limitations upon the delegated powers of cities and their instrumentalities. The defendants took nothing with their permit. It was an extralegal instrument. Of itself, it was without efficacy."

The court further pointed out that the defendants had constructed a building differing from the one for which they had obtained approval. It may be

noted in this connection that the plaintiffs in the case at bar undertook to use their building, following its construction, for the killing, defeathering, and dressing of poultry, which use was not referred to in the building permit, and which the board of zoning appeals in its resolution indicated was not a permissible use. None of the permits subsequently granted to them, on which plaintiffs rely in support of their claim of estoppel, authorized the additional use which they undertook to make of their premises, and which this Court, in the prior decision above referred to, expressly found to be unlawful.

In *Maguire* v. *Reardon*, 255 US 271 (41 S Ct 255, 65 L ed 625), it was held that the 14th Amendment to the Federal Constitution did not prevent municipal authorities from destroying a building constructed some years previously in violation of valid local regulations then existing. The State court had denied injunctive relief, and the decision was affirmed on the ground that under the facts as found by the court the structure was not a lawful one. On behalf of plaintiffs it was contended that they were deprived of vested rights without due process of law. The decision implies that the contention was rejected because of the fact that the building, when erected, violated the local ordinance.

In 31 CJS, p 421, it is said that the government or its instrumentalities "may not be estopped by acts of its officers or agents in violation of positive law, as by acts in violation of a zoning ordinance, or of fire regulations." Following the case of *Leigh* v. *City of Wichita*, 148 Kan 607 (83 P2d 644), as reported in 119 ALR 1503, is a somewhat extended annotation relating to the subject. In the course of the discussion it is there said:

"Most of the cases are to the effect that a municipality is not precluded from enforcing a zoning or

fire limit regulation by the fact that one or more of its officers or servants has exceeded his authority by issuing a permit contravening the terms of such regulation; and this notwithstanding that the holder of the permit has proceeded thereunder to his detriment before the municipality seeks to enforce the regulation against him."

In *Lipsitz* v. *Parr,* 164 Md. 222 (164 A 743), a municipal officer issued to the plaintiff a permit to construct an ice factory, which permit was unauthorized under the zoning ordinance of the city. In discussing the claim of estoppel based on the issuance of such permit and alleged reliance thereon by the plaintiff, it was said:

"If the provision of the ordinance be constitutional, it was therefore unlawful for the officers and agents of the municipality to grant the permit, and it would be unlawful for the licensee to do what the purporting permit apparently sanctioned. A permit thus issued without the official power to grant does not, under any principle of estoppel, prevent the permit from being unlawful nor from being denounced by the municipality because of its illegality. In the issuance of permits pursuant to the ordinance at bar, the municipality was not acting in any proprietary capacity nor in the exercise of its contractual powers, but in the discharge of a governmental function through its public officers of limited authority, and the doctrine of equitable estoppel cannot be here invoked to defeat the municipality in the enforcement of its ordinances, because of an error or mistake committed by one of its officers or agents which has been relied on by the third party to his detriment. Every one dealing with the officers and agents of a municipality is charged with knowledge of the nature of their duties and the extent of their powers, and therefore such a person cannot be considered to have been deceived or misled by their acts when done without legal authority."

In passing on a similar situation, the supreme court of California in *Magruder* v. *City of Redwood,* 203 Cal 665 (265 P 806), rejected the claim of estoppel, saying in part (pp 674, 675):

"That matter, therefore, is resolved down to the question whether the board of trustees by granting a permit to erect the second building, knowing at the time it was to be used as a hardware store, which use was contrary to the terms of the ordinance, thereby placed themselves in a position that prevented them from thereafter enforcing the terms of the ordinance which prohibited a lumberyard from being operated within the residence district. Appellant contends that they have. He cites no authority to support his contention, and we are not seriously impressed with it. We know of no power possessed by a board of trustees that will permit it in any such manner to nullify a legal ordinance adopted by the municipality. An ordinance of a municipality when once legally adopted becomes binding upon all the citizens thereof, officers as well as private citizens, and it is the sworn duty of those officers, charged with its enforcement, to prosecute all violations thereof. This duty is not a personal duty that can be waived at their will, nor can they be estopped by any action of theirs from the faithful performance of the same. There is no merit in this contention of appellant."

See, also, *Board of County Commissioners of Anne Arundel County* v. *Snyder,* 186 Md 342 (46 A2d 689); *Bowles* v. *Lentin* (CCA), 151 F2d 615 (cert denied, 327 US 805 [66 S Ct 958, 90 L ed 1029], rehearing denied, 328 US 877 [66 S Ct 976, 90 L ed 1645]); *Building Commissioner of Medford* v. *C. & H. Co.,* 319 Mass 273 (65 NE2d 537).

Plaintiffs' claim that the defendant municipality is estopped to enforce its zoning ordinance against plaintiffs' property because of the improper issuance of the building permit and of the licenses for

the years 1945, 1946, and 1947, is not tenable.   At the time such acts were performed plaintiffs were charged with knowledge of the restrictive provisions of the ordinance as applied to property in a "B2" district.   Such acts being unauthorized and in express contravention of ordinance provisions of the city, plaintiffs acquired no vested right to use their property for a purpose forbidden by law.   No claim is made that the building erected by plaintiffs, or the equipment therein, cannot be utilized for the transaction of a permissible business.   The sole question at issue is the right of plaintiffs to sell live poultry as a part of their operations.   The trial judge was correct in holding that they did not have such right and in consequence were not entitled to the relief sought by them.

The decree of the trial court dismissing the bill of complaint is affirmed, with costs to defendants.

SHARPE, C. J., and BUSHNELL, BOYLES, REID, NORTH, DETHMERS, and BUTZEL, JJ., concurred.