## BINGHAM v. CITY OF FLINT

1. ZONING—AMENDMENTS—PUBLIC HEARINGS.

   The statute authorizing the legislative body of a municipality to enact zoning regulations and amendments thereto requires that public hearings be held by such legislative body itself before they can become effective and, such duty to conduct such hearing being non-delegable, an amendment adopted by the legislative body without itself conducting a public hearing is void although there was a hearing by a commission appointed by the legislative body to study the proposed regulation or amendment (CL 1948, § 125.584).

2. SAME—LEGISLATIVE ENACTMENT—PROCEDURE—PUBLIC HEARINGS.

   The statutory requirement that municipal legislative bodies hold public hearings before adopting zoning regulations applies to amendments to existing regulations as well as original regulations (CL 1948, § 125.584).

3. SAME—AMENDMENTS—BUILDING PERMIT—VALIDITY.

   A building permit issued for a use not authorized by a valid zoning ordinance is not a valid permit even though it is issued on the basis of official action purporting to constitute a valid amendment of the zoning ordinance.

4. SAME — ORDINANCE — AMENDMENT — INVALID BUILDING PERMIT — EQUITY — REMOVAL OF BUILDING.

   A circuit judge is not obliged to issue an injunction requiring removal as a nuisance or barring operation of a building constructed under a building permit that was invalid because the amendment to the zoning ordinance under which it was issued was void if the entire circumstances, viewed together, present compelling reasons why equity should refuse the request for injunction.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 58 Am Jur, Zoning § 176.
[3] 58 Am Jur, Zoning § 184.
[4] 13 Am Jur 2d, Buildings §§ 10, 11.
   58 Am Jur, Zoning § 188.

Appeal from Genesee, Baker (John W.), J. Submitted Division 2 October 2, 1967, at Lansing. (Docket No. 3,102.) Decided November 29, 1968.

Complaint by Norris E. Bingham and Betty L. Bingham against the city of Flint, a municipal corporation, and Palmer Concrete Products, Inc., a Michigan corporation, for a temporary restraining order and permanent injunctive relief against the industrial use of rezoned property. Judgment for defendants. Plaintiffs appeal. Reversed and remanded.

*Dale A. Riker,* for plaintiffs.

*Edward P. Joseph,* for defendant Palmer Concrete Products, Inc.

LEVIN, J. Defendant Palmer Concrete Products, Inc. constructed a cement batch plant on land that had been rezoned from commercial to industrial by the Flint *city commission* following a public hearing conducted by the Flint *planning commission.*

On the day after construction was commenced the plaintiffs, Norris E. Bingham and Betty L. Bingham, owners of property near the rezoned property, filed their complaint in this case seeking a temporary restraining order and permanent injunctive relief against the industrial use of the rezoned property. No relief was granted the Binghams, and they appeal from a judgment which among other things declares that the cement batch plant may remain on the land.[1]

---

[1] The Flint planning commission recommended denial of the proposed change in zoning.

At successive regular meetings of the city commission the planning commission's recommendation was received, an ordinance changing

The Binghams contend that the ordinance adopted by the Flint city commission making the change in zoning was invalid because no hearing was held by the city commission itself before it acted. We agree and hold that the ordinance was not validly adopted and remand for further proceedings on the question whether Palmer Concrete Products should be required to remove the plant so constructed.

## I.

The governing statute is the zoning enabling act applicable to cities and villages, CL 1948, § 125.581 *et seq.*, as amended. Section 4 of the statute (CL 1948, § 125.584 [Stat Ann 1958 Rev § 5.2934]) authorizes the legislative body of any city to provide by ordinance for the manner in which the regulations and boundaries of districts or zones shall be determined and enforced or from time to time amended, supplemented, or changed, "provided,

the zoning from D-4 commercial to E industrial was proposed and the ordinance was adopted. Notice that the proposed zoning change would be considered at such city commission meetings was not published or otherwise given to neighboring property owners. The ordinance was duly published after its enactment and became effective May 20, 1966.

At a regular meeting of the city commission held May 20, 1966 the matter was referred back to the planning commission. On June 8, 1966 the planning commission recommended that the zoning be changed back to D-4 commercial. On June 27, 1966, effective July 9, 1966, the city commission so amended the ordinance to restore the subject parcel's former D-4 commercial zoning.

In the meantime, on May 24, 1966 a building permit had been issued to Palmer Concrete Products, which proceeded immediately with the construction of the cement batch plant. This action was commenced on May 25, 1966, and Palmer Concrete Products was served at about noon on that day. The construction work continued during the pendency of this action and was completed before July 9, 1966. The trial judge found that before the suit was started footings for the aggregate bins had been dug and that 63-1/2 yards of concrete at $17 per yard had been poured and 7 trailers and various cranes had been moved on the site. An additional 20-1/2 yards were poured May 25, 1966. Certain painting work was done on May 24, 1966. The trial judge found the work done prior to the start of the suit was "substantial progress toward construction".

however, that *a public hearing shall be held before such regulations become effective.*"[2]    (Emphasis supplied.)

Since § 4 thus far related has not particularized whether the public hearing which it requires needs to be conducted by the legislative body itself, as the Binghams contend, or whether it may be conducted by an agency designated by the legislative body such as a planning commission, as Palmer Concrete Products contends and the trial judge determined, we read on and examine the rest of § 4 for a clue to the legislature's intention.   Section 4 goes on to provide that in cities, such as Flint, having a population in excess of 25,000 the following special requirements are applicable:

— the legislative body shall not in the "first instance" determine the boundaries of districts nor impose regulations until after the final report of a commission which the legislative body may appoint to recommend the boundaries of districts and appropriate regulations to be enforced therein;

— the commission appointed by the legislative body is to make a tentative report and hold public hearings thereon before submitting its final report.

Section 4 continues:

The *"hearing as above provided before the legislative body* shall not take place until such final report of such commission has been received, nor shall the ordinance or maps be amended after they are adopted in the first instance until the proposed amendment has been submitted to such commission and it has made report thereon;"[3].   (Emphasis supplied.)

[2] Section 4 of the statute also requires that notice of the time and place of such public hearing shall be given in the manner in the statute prescribed, and that a hearing be granted any person interested at the time and place specified.

[3] Section 4 also provides:

"In either case the legislative body may adopt such ordinance

Since the only pertinent[4] reference to a public hearing in § 4 preceding the words "hearing as above provided before the legislative body" is that contained in the phrase "a public hearing shall be held before such regulations become effective", it appears clear that the statutorily required public hearing— the public hearing required to be held "before such regulations become effective"—is a hearing conducted by the legislative body itself. See *Town of Hillsboro Beach* v. *Weaver* (Fla, 1955), 77 So 2d 463, construing a statute substantially similar to ours.

We are also satisfied that the requirement of a hearing by the legislative body itself applies to amendments as well as to original or "in the first instance" regulations.[5] In this connection we note that § 4 concludes by providing that after the ordinance and maps have in the first instance been approved by the legislative body of a city or village, amendments or supplements thereto may be made from time to time *"as above provided."*

If the city commission's power to determine the manner in which boundaries of districts or zones are to be established or from time to time amended, supplemented or changed includes the power to delegate the legislative body's hearing function, then "as above provided" could indeed be interpreted as authorizing the city commission to establish a procedure for consideration and adoption of amend-

---

and maps with or without amendments or refer same again to the commission for a further report."

We do not think this provision material to our inquiry. The city commission may no doubt reject the recommendation of its planning commission, *cf. Temple* v. *Portage Township* (1962), 365 Mich 474. The question before us is whether the city commission may act before a public hearing has been conducted by the city commission itself.

[4] The previously mentioned hearing required to be held by the commission *to be appointed* by the legislative body quite obviously is not the "hearing as above provided before the legislative body".

[5] Compare *Towle* v. *Nashua* (1965), 106 NH 394 (212 A2d 204).

ments to its zoning ordinance which does not require the city commission itself to conduct a public hearing on the proposed amendment. A more apparent and less strained interpretation of "as above provided", one that appeals to us, is to read it as meaning: according to the procedure "above provided" in this § 4 to the extent this section purports to prescribe the procedure.

The procedure set forth in § 4 indisputably requires a hearing before the legislative body itself "in the first instance". In our opinion it was that procedure which the concluding language of § 4 referred to "as above provided" and which such concluding language of § 4 thereby adopted as applicable for "amendments or supplements". So interpreted, the city commission remains free to establish procedures for the adoption of amendments to its zoning ordinance, but only such as are not in conflict with particularized requirements of § 4 of the enabling act, such as the requirement of a public hearing before the legislative body.

The following language of § 4 does not change the matter:

"Where a city has a city plan commission or corresponding commission, the legislative body may appoint such commission to perform the duties above specified."

The "duties above specified" do not include *all* duties above specified. The more sensible construction of the words "duties above specified" is to read them as referring to those duties which are to be performed by the "commission" to be appointed by the legislative body, not those to be performed by the legislative body itself. As we read the sentence last quoted above, all it permits the legislative body to do is to delegate to its planning commission the

hearing and recommendation functions of the "commission" to be appointed by the legislative body—thereby avoiding the convening of a separate commission in those communities which have a planning commission.

Section 4 does not authorize the legislative body to delegate its legislative powers under the enabling statute to such a planning commission. Compare *Temple* v. *Portage Township* (1962), 365 Mich 474, 478. Nor does it authorize delegation of the hearing function of the legislative body. Palmer Concrete Products' argument requires an interpretation of § 4 that would permit delegation of the legislative body's hearing function in the amendment situation even though it is clear that separate hearings before the commission appointed by the legislative body and before the legislative body itself are required in the case of an initial promulgation. It seems to us that the sounder construction of § 4 is that precisely the same procedure required in the case of an initial promulgation is to be followed by the legislative body in the case of an amendment.

We, therefore, conclude that § 4 requires the legislative body itself to conduct a public hearing on a proposed amendment to its zoning ordinance before the amendment can become effective and that the duty to conduct such hearing is non-delegable.

We have considered whether the regularity of the proceedings taken to pass the ordinance changing the zoning of Palmer Concrete Products' property is protected from judicial scrutiny and have concluded that whatever presumption of regularity may apply cannot save this ordinance. *McClellan* v. *Judge of Recorder's Court of Detroit* (1924), 229 Mich 203, 211–213; *Tennent* v. *City of Seattle* (1914), 83 Wash 108 (145 P 83, 86).

## II.

Our Supreme Court has held that an ordinance adopted without a public hearing required by § 4 is void. *Krajenke Buick Sales* v. *Hamtramck City Engineer* (1948), 322 Mich 250. We hold, therefore, that the ordinance which changed the zoning of the land in question from commercial to industrial was void. Since the zoning change was accomplished by an invalid ordinance, the commercial zoning remained unaffected by the purported change in zoning.

Palmer Concrete Products directs our attention to *Expert Steel Company* v. *City of Clawson* (1962), 368 Mich 619. In that case and in *Sandenburgh* v. *Michigamme Oil Co.* (1930), 249 Mich 372, the Michigan Supreme Court held that where substantial construction work[6] had been done pursuant to a validly issued permit, the municipality could not prevent completion of the work on the basis of a change in zoning after such work had been done. That is not, however, this case. The permit here was not valid when issued.

A building permit issued for a use unauthorized by the zoning ordinance is not a valid permit even though it is issued on the basis of official action purporting to constitute a valid amendment of the ordinance. *Michigan-Lake Bldg. Corp.* v. *Hamilton* (1930), 340 Ill 284 (172 NE 710); *Taylor* v. *Shetzen* (1955), 212 Ga 101 (90 SE2d 572); *Civil City of Indianapolis* v. *Ostrom Realty & Construction Co.* (1931), 95 Ind App 376 (176 NE 246); *Leahy* v. *Inspector of Buildings of New Bedford* (1941), 308

---

[6] Compare *Township of Bloomfield* v. *Beardslee* (1957), 349 Mich 296, 307, which held that mere removal of gravel from the property did not establish a permanent nonconforming use as a gravel pit, since not work of a "substantial character" in preparation for permanent use.

Mass 128 (31 NE2d 436). Compare *Fass* v. *City of Highland Park* (1949), 326 Mich 19, where the Court held the property owner could not rely on a building permit issued on the basis of an erroneous interpretation of a zoning ordinance. See, also, *Township of Pittsfield* v. *Malcolm* (1965), 375 Mich 135.

It does not necessarily follow, however, that a mandatory injunction should issue requiring removal of the batch plant. See *Township of Pittsfield* v. *Malcolm, supra,* and *Township of Farmington* v. *Scott* (1965), 374 Mich 536, 540. In these recent cases the Michigan Supreme Court declared that a circuit judge is not obliged to issue an injunction requiring abatement as a nuisance of a use invalid under a zoning ordinance if "the entire circumstances, viewed together, present compelling reasons why equity should refuse plaintiff's request for injunction", *Township of Pittsfield, supra,* p 148; see, also, Mr. Justice BLACK's separate concurring opinion in that case. Here nearby property owners rather than the municipality, as in the last cited cases, seek removal of the prohibited use, but the principle enunciated in those cases is equally applicable.

Whether it would be inequitable to grant the plaintiffs, the Binghams, an injunction requiring removal of the plant depends on a closer appraisal of the facts than is possible either on the record so far made or from the findings of fact made by the trial judge (see footnote 1). We remand and order a new trial on that question.

Reversed and remanded for a new trial. Costs to abide the event.

McGREGOR, P. J., and QUINN, J., concurred.