SOUTER v BOARD OF ZONING APPEALS OF THE CITY OF
GRAND RAPIDS

OPINION OF THE COURT

1. LICENSES—BUILDING PERMITS—ZONING—MUNICIPAL CORPORATIONS
—ORDINANCES—PLANNING COMMISSION APPROVAL—MINISTE-
RIAL DUTY.

A city planning commission's duty to approve a building permit
for construction of a sign in a planned industrial area is a
ministerial duty where the governing ordinance provides that
the approval shall be given when such signs meet all the
requirements; the city zoning appeals board, which has the
final word on all planning commission decisions, may omit this
approval procedure as long as it ensures that the applicant has
met all of the substantive ordinance requirements (Grand
Rapids City Code, ch 61, art 20, § 5.33[6][d]).

2. MUNICIPAL CORPORATIONS—ORDINANCES—BUILDING PERMITS—ZON-
ING.

An ordinance which makes null and void a permit issued in
conflict with the provisions of the ordinance applies only to
violations of substantive provisions and issuance of a building
permit in violation of substantive provisions of a zoning ordi-
nance does not give the builder the right to use the premises in
violation of the ordinance nor does it estop the city from
enforcing the ordinance; however, the city board of zoning
appeals retains the ability to waive procedural formalities such
as obtaining the prior approval of the city planning commission
(Grand Rapids City Code, ch 61, art 23, § 5.273).

3. LICENSES—BUILDING PERMITS—NONCONFORMING USE—SUBSTANTIAL
RELIANCE.

An applicant for a building permit has the right to rely on a
valid permit once it is issued by a city or township; the
possession of a permit and substantial reliance thereon will
give vested rights to a nonconforming use, and all actions
which have been undertaken and completed by the permit

REFERENCE FOR POINTS IN HEADNOTES

[1–4] 58 Am Jur, Zoning § 178 *et seq.*

holder prior to actual notification to him of the revocation of the permit must be considered in determining substantial reliance.

Dissent by McGregor, J.

4. Licenses—Building Permits—Advertising Sign—Municipal Corporations—Ordinances—Zoning.

*A building permit issued for a free-standing sign is null and void where the applicant failed to obtain prior approval of the city planning director as required by the city zoning ordinances; commencing or completing construction on the sign cannot validate an otherwise invalid permit (Grand Rapids City Code, ch 61, art 20, § 5.233[4], ch 61, art 23, § 5.273).*

Appeal from Kent, Stuart Hoffius, J. Submitted June 6, 1975, at Grand Rapids. (Docket No. 22596.) Decided August 14, 1975.

Complaint by Don V. Souter and others against the Board of Zoning Appeals of the City of Grand Rapids, the city's Department of Building Inspection, Naegele Outdoor Advertising Company of Grand Rapids, Inc., and Ted Aalsburg for an order of superintending control to revoke a building permit. Judgment for defendants. Plaintiffs appeal. Affirmed.

*Cholette, Perkins & Buchanan* (by *Don V. Souter*), for plaintiffs.

*Warner, Norcross & Judd* (by *Vernon P. Saper*), for defendant Naegele.

*George Weible,* City Attorney, (by *Richard A. Wendt*), for the Grand Rapids Board of Zoning Appeals and Department of Building Inspection.

Before: McGregor, P. J., and D. E. Holbrook and N. J. Kaufman, JJ.

N. J. KAUFMAN, J. We adopt the facts recited by
the dissent. We affirm the trial court's approval of
the Board of Zoning Appeals' (Board) issuance of a
building permit to defendant Naegele Outdoor
Advertising Co. (Naegele).

We find, for the reasons given by the dissent,
that Naegele's construction of the sign was, at the
time it was built, permitted by the relevant provi-
sions of the Grand Rapids City Code. Notwith-
standing this fact, plaintiff and the dissent claim
that the issuance of the building permit was done
without authority. They rely on City Code ch 61,
art 23, § 5.273, which provides:

"No oversight or dereliction on the part of the Direc-
tor of Community Improvement and Inspection Services
or his authorized assistants or any official or employee
of the City of Grand Rapids vested with the duty or
authority to issue permits or licenses shall legalize,
authorize, waive or excuse the violation of any of the
provisions of this ordinance. No permit, nor any license
for any use, building or purpose shall be issued by any
official or employee of the City of Grand Rapids if *the
same would be in conflict with the provisions of this
ordinance.* Any person or license so issued shall be null
and void." (Emphasis supplied.)

They contend that Naegele's failure to get the
planning commission's approval was "in conflict
with the provisions of [the] ordinance" and ren-
dered null and void the permit issued by the
Board.[1]

---

[1] We find that the dissent was incorrect in citing § 5.233(4) as
representing the procedure for obtaining approval to put up a free-
standing business sign. That section pertains to the procedure for
developing an entire lot, not for putting up a sign. Under § 5.233(4),
any signs to be erected as part of the development shall be made part
of the site plan which must be submitted to the planning commission
for its approval. Naegele was not developing a lot, but was putting up
a free-standing sign. The procedure for doing this is specifically

We disagree. Our reading of the City Code's procedure for obtaining approval to construct a sign convinces us that the Board's approval vitiated Naegele's failure to acquire the city planning commission's imprimatur. First, § 5.273 is a general provision. As such, it must be read in the context of art 19, that provision which specifically governs planned industrial districts. The role of the planning commission cannot be viewed in a vacuum. It is part of a procedure designed to insure that a proposed sign meets the specifications dictated by the ordinance and will not cause aesthetic or safety problems. The planning commission has limited discretion in this scheme. Its sole function is to ensure that the proposed sign satisfies the design specifications detailed by the ordinance. Its approval *"shall* be given when such signs meet all the requirements therefor under the City Code". Grand Rapids City Code, ch 61, art 20, § 5.233(6)(d). (Emphasis supplied.) If the requirements are met, the commission's duty to approve the permit becomes purely ministerial. *Bills v Grand Blanc Township,* 59 Mich App 619; 229 NW2d 871 (1975).

The Board represents the final arbiter in the administrative process. It is important to remember that flexibility is the essence of this procedure, as it should be for all administrative process. Once the Board has made sure that no technical, aesthetic or safety problems exist, the function of the procedure has been fulfilled. This fulfillment, not a rote-step of procedural requirements, is the purpose behind the entire procedure. We do not see why the zoning board cannot shorten the procedure as long as it ensures that the applicant has

governed by § 5.233(6). That section sets physical specifications and, as does § 5.233(4), requires planning commission approval.

met all of the substantive ordinance requirements. The Board has the final word on all planning commission decisions. As such, we cannot consider the Board's determination that the ordinance requirements were satisfied as an improper usurpation of the commission's essentially ministerial function.

Second, we read § 5.273 as inapplicable to this type of case. Section 5.273 makes "null and void" a permit issued "in conflict with the provisions of this ordinance". We find that the "provisions" cited are substantive, not procedural ones. Section 5.273 is essentially a codification of the principal that the issuance of a building permit in violation of substantive provisions of a zoning ordinance does not give the builder the right to use the premises in violation of the ordinance nor does it estop the city from enforcing the ordinance. *Fass v Highland Park,* 326 Mich 19; 39 NW2d 336 (1949). We cannot read the section as making absolute compliance with procedural formalities a prerequisite to approval and as removing from the Board of Zoning Appeals the ability to waive such formalities.

In addition to finding that statutory construction favors defendant, we find from a review of the record that the great weight of the equities are on the side of defendant Naegele. Naegele built a sign that complied with the existing ordinance. It did so in reliance on an apparently legitimate approval by the building inspector, an officer of the city. This is not a case where an applicant claimed reliance on a permit issued for a purpose not authorized by the ordinance. *Bingham v Flint,* 14 Mich App 377; 165 NW2d 628 (1968). Indeed, the city ordinance could reasonably be read to require that the building inspector, not the applicant, has

the onus of obtaining planning commission approval. Naegele should not be punished for this failure. As the late Chief Justice THOMAS M. KAVANAGH noted, in analyzing the vesting of a nonconforming use:

"Once a city or township issues a valid permit to an applicant, that applicant has every reason and right to rely thereon in his business dealings. Permits are not issued by local authorities when the contemplated use for which the permit is issued conflicts with a local zoning ordinance. * * * [H]e has within his possession an official document of the local community authorizing him to proceed with his contemplated project.

"While it is true that the issuance of a permit itself will not give vested rights to a nonconforming use to the holder thereof, the possession thereof, and substantial reliance thereon, will give such rights. And in determining whether or not there has actually been substantial reliance on the issuance of the permit, * * * equity demands that, at the very least, all actions which have been undertaken and completed by the holder of the permit prior to actual notification to him of the revocation of such permit must be considered." *Dingeman Advertising, Inc v Algoma Township,* 393 Mich 89, 98–99; 223 NW2d 689 (1974).

Ordering Naegele's sign to be torn down under these circumstances would be a most inequitable holding.

Affirmed. Costs to defendants.

D. E. HOLBROOK, J., concurred.

McGREGOR, J., *(dissenting).* On March 12, 1971, an official of the Community Improvement and Inspection Service of the City of Grand Rapids issued a permit to Naegele Advertising Company for the construction of a 15-foot by 55-foot advertising sign in a planned industrial district (PID)

near Plymouth Road and Interstate 96, in Grand
Rapids. As the construction of the sign progressed,
Don V. Souter, one of the plaintiffs, observed the
construction and checked with city officials con-
cerning its legality. He received information from
both the city attorney and the city manager that
the sign was not in conformity with the City
Zoning Ordinance concerning PID.

The sign, nevertheless, was completed. An ap-
peal was subsequently brought before the Board of
Zoning Appeals for the City of Grand Rapids by
petition filed July 20, 1973. The Board considered
the matter at three of its meetings and on Septem-
ber 20, 1973, passed the following resolution:

"Be it resolved that the relief requested in the appli-
cation by Mr. Souter be rejected for the following
reasons and findings of fact:
"1. The ordinance as originally adopted did not con-
tain adequate prohibition against erection of billboards
in a planned industrial district and was subsequently
amended by Ordinance No. 72-32 adopted April 25,
1972 expressly prohibiting billboards within this dis-
trict.
"2. The time of beginning substantial construction
upon the billboard is not sufficiently clear for this
Board to determine that the billboard would be gov-
erned by the 1969 Zoning Ordinance or that in effect
prior to that time which permitted billboards. Motion to
deny this request was made by Mrs. Brooks, seconded
by Mr. Winter and carried: Yeas 8, Nays 0."

On October 11, 1973, plaintiffs brought this ac-
tion for superintending control to the Kent County
circuit court. The trial judge, sitting as finder of
fact, held that the action of the Board of Zoning
Appeals was correct in that the ordinance allowed
the issuance of the permit at the time it was
issued, and failure to procure prior approval by

the Director of Planning was excusable, since the construction of the sign did comply with various provisions of the Grand Rapids code.

Plaintiffs now bring this appeal, asserting that the construction of an advertising sign in a planned industrial district was not permitted by the city ordinances of Grand Rapids and that, even if it was, the procedure defined in the ordinance was not followed. Therefore, the granting of the permit was without legal authority and should be revoked.

Paragraph V, ch 61, art 20, § 5.232 of the Grand Rapids City Code, which was in effect on March 12, 1971, provides:

"Use Regulations. Any use permitted in the I-1 Light Industrial Zone and ancillary service-type uses, trade schools with sleeping quarters, project-oriented industrial engineering with consultant offices, project-oriented recreational facilities and printing establishments shall not be permitted in the PID Zone."

Paragraph V, ch 61, art 19, § 5.222(8), in enumerating the permissible uses in an I-1 zone, provides:

"Advertising signs with a sign surface not exceeding eighteen (18) feet by fifty-five (55) feet".

An advertising sign of the dimensions 15 feet by 55 feet was permissible in an I-1 zone. By reference, the same sign is not permissible in a PID zone. The addition to § 5.232 of the language "Advertising signs shall not be permitted in this zone district", in April, 1972, supports that interpretation. At the very least, the addition of new language indicates that the initial intent, if such an intent existed, to exclude advertising signs from a

PID zone was not expressed by the language of the statute and needed a clear expression.

However, ch 61, art 20, § 5.233(4), does require that site plans for individual lots within a PID zone *"shall first* be approved by the Planning Director and other departments concerned as to compliance with the Grand Rapids Codes and the provisions hereof before final working drawings are started for the structure. The site plan shall include * * * *free-standing signs"*. (Emphasis added.) This provision was not complied with in the instant case.

In this regard, it is important to look to ch 61, art 23, § 5.273, which provides:

"No oversight or dereliction on the part of the Director of Community Improvement and Inspection Services or his authorized assistants or any official or employee of the *City of Grand Rapids vested with the duty or authority to issue permits or licenses shall legalize, authorize, waive or excuse the violation of any of the provisions of this ordinance.* No permit, nor any license for any use, building or purpose shall be issued by any official or employee of the City of Grand Rapids if the same would be in conflict with the provisions of this ordinance. *Any person or license so issued shall be null and void."* (Emphasis added.)

Therefore, by the clear language of § 5.273, the failure to comply with the provisions of § 5.233(4) rendered the permit issued in this case *null* and *void.*

The defendant sign company certainly cannot, either by commencing or completing construction on the sign, validate an otherwise invalid permit. I do not think that the trial court was correct in holding that the provisions of § 5.233(4) can simply be ignored where, in retrospect, it appears that compliance or noncompliance therewith would ul-

timately end in a similar result. Such a holding would effectively emasculate the clear language of both § 5.273 and § 5.233(4), in that a person would be able to build a structure in a PID zone without gaining the necessary prior approval, and then subsequently attempt to justify such noncompliance by claiming that to do so was unnecessary since the structure did, in fact, comply with the zone's use regulations. Such a result is contrary to the language of the above ordinances. It would change the language of § 5.233(4) to read that prior approval is needed only where the structure is later found to be nonconforming. Similarly, the language of § 5.273 would be changed to read that a null and void permit is only null and void if the structure is again later found to be nonconforming. The above ordinances clearly provide otherwise.

The real problem present in the foregoing is that the overall planning system by the city is disrupted and the prior approval provisions of § 5.233(4) are destroyed. It is only after the structure is built or contruction is commenced that the trial court's holding would allow the safeguards contained therein to be employed.

The decision of the Zoning Board of Appeals for the City of Grand Rapids and the decision of the trial court should be reversed.