NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0214n.06

Case No. 25-1990

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
May 15, 2026
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| NATURALE & CO., | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| HAMTRAMCK INVESTMENT GROUP, | ) | STATES DISTRICT COURT FOR |
| INC., | ) | THE EASTERN DISTRICT OF |
| | ) | MICHIGAN |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | OPINION |
| | ) | |
| BRUCE ECK, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| CITY OF HAMTRAMCK, MICHIGAN, | ) | |
| Defendant-Appellee. | ) | |

Before: WHITE, THAPAR, and MATHIS, Circuit Judges.

**MATHIS, Circuit Judge.** In early 2021, Hamtramck Investment Group, Inc. ("HIG") sought to enter the growing marijuana market in the City of Hamtramck. But the clock was ticking. The City was moving to restrict any new retailers from operating within city limits. So HIG met with the city clerk to see what it could do. Based on its impression from that meeting, HIG believed that it could proceed as planned. Yet when the State of Michigan eventually declined to grant HIG a marijuana retailers license based off the City's disapproval, HIG sued the City under 42 U.S.C. § 1983, asserting a substantive-due-process claim. The district court granted summary judgment to the City. We affirm.

**I.**

In early 2021, HIG formed with the intent of opening a marijuana dispensary in the City of Hamtramck. At that time, the City did not have an ordinance prohibiting or limiting the number of marijuana businesses within its city limits. By February 4, HIG had leased a retail property ("the Property") in the hopes of converting it into a marijuana facility. And it planned to profit from an apparent appetite for marijuana in the City. But the marijuana market was about to change. The City was moving to curtail the proliferation of new marijuana retailers. *See* Hamtramck Code of Ordinances § 121.003(B) (2026). And time was running out for interested players in the field.

To understand this dispute, some background on the approval process for marijuana retailers in Michigan is useful. Although Michigan allows certain retailers to sell marijuana, "a municipality may completely prohibit or limit the number of mari[j]uana establishments within its boundaries." Mich. Comp. Laws § 333.27956(1). Michigan will not issue a marijuana-establishment license if the "municipality in which the proposed mari[j]uana establishment will be located . . . notif[ies] [the State] that the proposed mari[j]uana establishment is not in compliance with an ordinance . . . in effect at the time of application." *Id.* § 333.27959(3)(b). Additionally, before opening an adult-use marijuana establishment in the State, an applicant must go through a two-step approval process. The first step is prequalification. At this stage, the applicant pays a nonrefundable fee and undergoes a criminal background check, fingerprinting, and a financial background investigation.[1] The second step requires applicants to submit information related to the physical location of the dispensary. *See id.* § 333.27959(3)(b)–(c). Submissions include business specifications, proof of financial responsibility, municipality information, and general

---

[1] *See Step 1: Prequalification*, Cannabis Regul. Agency, https://www.michigan.gov/cra/sections/adult-use/online-application-resources/prequal (last visited Apr. 12, 2026); *see also* Mich. Comp. Laws § 333.27959(3)(a).

employee information.[2]   Only after the State has reviewed these materials, conducted an inspection, and received a final fee does an applicant receive a license.

On February 4, 2021, two HIG representatives met with August Gitschlag, the Hamtramck City Clerk, to sign an Attestation 2-C form for the Property.  This form required the city clerk's signature and functioned as a city acknowledgment that no ordinance prohibited the establishment of a commercial marijuana dispensary.[3]  Gitschlag signed the form and allegedly stated that the City would "grandfather[] [HIG] in" so that it "could operate a marijuana facility at that location," notwithstanding the imminent ban on new dispensaries.  R. 102-1, PageID 1790.  As a result, HIG left this conversation with the impression that a signed attestation form would exempt the company from the regulatory change.  And according to HIG, this impression was confirmed when another HIG representative called Gitschlag afterward to verify that the company would be safe from any new city regulation.

At some point on the same day, HIG also applied to the City for a general business license. The application carried a disclaimer, which a company representative signed.  The disclaimer provided that applicants for the license "underst[oo]d that their businesses must receive formal approvals and/or licenses from several city departments and, depending on the business, from state, county and Federal authorities before they can open their business."  R. 95, PageID 1738.  The disclaimer further warned that applicants "expending funds prior to obtaining all required licenses,

---

[2] *See Step 2: New Applications*, Cannabis Regul. Agency, https://www.michigan.gov/cra/sections/adult-use/online-application-resources/new-app (last visited Apr. 12, 2026).

[3] *See also* R. 106, PageID 1856 ("This form is part of the application for a state license to operate a marijuana establishment.  It requires the notarized signature of the clerk of the municipality verifying that the municipality has not adopted an ordinance prohibiting adult-use marijuana establishment, or the municipality has an ordinance allowing adult-use marijuana establishments, and the application is not in violation of the ordinance.").

permits and approvals [did] so at their own risk" because an approval from one department or governmental entity did "not guarantee" one from another body. *Id.*

The City cemented its opposition to new dispensaries just a few days afterward. On February 9, it passed an ordinance authorizing current marijuana retailers but prohibiting "new marijuana retailers or marijuana provisioning centers . . . after the effective date" of the ordinance. Hamtramck Code of Ordinances § 121.003(A)–(B). The ban on new dispensaries began on February 12. But HIG continued applying for a variety of building and utility permits—many of which were approved—and began reconstructing the Property to fit its vision for a new dispensary.

HIG's progress would soon come to a halt. The company had applied for prequalification sometime after its conversations with Gitschlag, and the State approved it for prequalification status. In September 2021, the State contacted the City about the Property after discovering that the Property appeared to be within 1,000 feet of a nearby school. "This would be in violation of the [Michigan Regulation and Taxation of Marijuana Act] and make [the] proposed marijuana establishment ineligible for a state license." R. 95, PageID 1763. Despite this issue, the State asked the City whether it had an ordinance that reduced the 1,000-feet requirement or, alternatively, whether the City measured proximity in a different manner such that there was no problem.

On September 14, in response to the State's inquiry, the City notified the State that HIG's "proposed marijuana establishment is not in compliance with an existing city ordinance" because Hamtramck "prohibits all marijuana establishments from operating in Hamtramck if they were not licensed before" February 12, 2021. *Id.* at 1765. So without approval from the City, the State withheld licensure from HIG.

HIG sued the City under 42 U.S.C. § 1983.[4] It asserted a substantive-due-process claim, alleging that the City illegally revoked its permission for a marijuana retailers license. The City moved for summary judgment, which the district court granted. HIG now appeals that decision.

**II.**

We review the grant of summary judgment de novo. *Puskas v. Delaware County*, 56 F.4th 1088, 1093 (6th Cir. 2023). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

**III.**

The Due Process Clause of the Fourteenth Amendment prohibits "any State" from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. As the Supreme Court has recognized, the Due Process Clause has procedural and substantive components. *See Dep't of State v. Muñoz*, 602 U.S. 899, 909–10 (2024). HIG presses only a substantive-due-process claim.

Substantive due process "bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (citation modified). A plaintiff must make two showings to succeed on a substantive-due-process claim. First, it must show that "it has a constitutionally protected interest." *Golf Vill. N., LLC v. City of Powell*, 42 F.4th 593, 601 (6th Cir. 2022). And second, the plaintiff must show that the government "deprived it of that interest through arbitrary and capricious action." *Id.* (citation

---

[4] HIG initially brought this action alongside Naturale & Co. against both the City and Bruce Eck, a building inspector for the City. Naturale withdrew its claims. And HIG then dismissed its claims against Eck.

modified). HIG has a constitutionally protected interest only if it has a cognizable property interest in its proposed marijuana dispensary.

The Constitution does not create property interests. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). Instead, protected property interests are created and defined by "existing rules or understandings that stem from an independent source such as state law." *Id.* To have a property interest in a particular benefit, however, a person "must have more than an abstract need or desire for it . . . [or] a unilateral expectation of it." *Id.* Rather, he must have "a legitimate claim of entitlement to it." *Id.*

HIG argues that Gitschlag's alleged statement—that HIG could operate a marijuana retail business despite a City ordinance to the contrary—created a property interest. We turn to Michigan law to determine whether that is the case.

Under Michigan law, Gitschlag had no authority to bind the City. "Persons dealing with a municipal corporation through its officers must at their peril take notice of the authority of the particular officer to bind the corporation, and, if his act is beyond the limits of his authority, the municipality is not bound." *Sittler v. Bd. of Control of Mich. Coll. of Mining & Tech.*, 53 N.W.2d 681, 687–88 (Mich. 1952) (quotation omitted). A municipal officer can bind a municipality only if "empowered to do so by the city charter," ordinance, or other laws. *Manning v. City of Hazel Park*, 509 N.W.2d 874, 877 (Mich. Ct. App. 1993). HIG does not claim that the City's charter empowered Gitschlag to overrule the city council and approve HIG's marijuana license, or that the city council had authorized Gitschlag to exempt certain applicants.

On the contrary, the record reveals that Gitschlag, as the city clerk, retained a limited set of duties. These duties included running elections, managing city council minutes, handling the business and pet licensing, and "other random duties." R. 95, PageID 1523. What these duties

did not include was the power to abrogate, modify, or clarify city ordinances. Indeed, Gitschlag acknowledged that he "was not in the business of promising any[]" sort of legal guarantee regarding such ordinances. *Id.* at 1717.

HIG offers no evidence or binding authority that contradicts or undermines the conclusion that Gitschlag had no power to bind the City such that HIG would have a legitimate property interest in a license. Instead, HIG points to two unpublished district court decisions, neither of which is factually analogous or legally relevant.

*Nursing CE Central LLC v. Colibri Healthcare, LLC* involved a tortious-interference claim under Kentucky law. No. 5:23-232, 2024 WL 329523, at *3 (E.D. Ky. Jan. 29, 2024). It had nothing to do with a substantive-due-process claim.

*Menosky v. City of Flint* suggests that "[p]romissory estoppel can be used to establish a constitutional property interest for due process purposes." No. 10-CV-11804, 2012 WL 5818330, at *6 (E.D. Mich. Oct. 18, 2012). But HIG has not shown that it had a right to establish and operate a dispensary in violation of an ordinance. *See Fass v. City of Highland Park*, 39 N.W.2d 336, 341 (Mich. 1949). For instance, in *Fass*, the city issued the plaintiffs a license to sell live poultry on their property, even though a zoning ordinance prohibited that activity at their location. *Id.* at 337–39. The plaintiffs brought an estoppel action against the city after it declined to re-issue the license, despite doing so for three straight years. *Id.* The Michigan Supreme Court rejected the plaintiffs' estoppel claim, concluding that "plaintiffs acquired no vested right to use their property for a purpose forbidden by law." *Id.* at 341. That same rationale applies here. HIG has not demonstrated how Gitschlag could grant HIG a right to operate a marijuana retail business in violation of the City ordinance.

HIG also suggests that its expectation of an approval from the City was warranted because it received many other permits and licenses. But this does nothing to alter Gitschlag's limited role in handling the City's affairs. More to the point, HIG ignores a key fact: it acknowledged in its business license application that it was not guaranteed any license or permit based on receiving approval for a different license or permit.

Because HIG has not shown that it had a protected property interest in the City's approval of a marijuana retailers license, its substantive-due-process claim therefore fails.

## IV.

For the reasons above, we **AFFIRM** the district court's judgment.