TOWNSHIP OF PITTSFIELD *v.* MALCOLM

OPINION OF THE COURT.

1. TOWNSHIPS—ZONING ORDINANCE—ANIMAL KENNELS.
    Township zoning ordinance which repeatedly and unambiguously provided that no building or structure or part thereof should be erected, altered, or used for other than 1 or more of the specified uses in a district indicated clearly an intent to define with care the rights of property owners in the various districts within the township, thereby made animal kennels, in light industrial district where defendants' property was located an impermissible use, where such use was specifically permitted in 2 of the other districts and not included in the uses permissible in defendants' district (Pittsfield Township Zoning Ordinance, arts 7–11).

2. SAME—ZONING ORDINANCE—INTENT.
    It is the duty of a court to give effect to the manifest intention of a clearly worded township zoning ordinance (Pittsfield Township Zoning Ordinance, arts 7–11).

<hr>

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 58 Am Jur, Zoning § 11.
[3] 58 Am Jur, Zoning § 70.
[4, 5] 58 Am Jur, Zoning § 192.
Right of municipality or other public authority to enforce zoning or fire limit regulations as affected by its previous conduct in permitting or encouraging violation thereof.   119 ALR 1509.

3. SAME—ZONING ORDINANCE—BURDEN OF SHOWING UNREASONABLE-
NESS.

A party asserting a township zoning ordinance to be unreasonable
that does not appear to be so on its face, has the burden of
showing it to be so, and such burden is not sustained by the
bald assertion of unreasonableness.

4. SAME—ZONING ORDINANCE—ANIMAL KENNEL—BUILDING PERMIT—
NONESTOPPEL—INJUNCTION.

The general rule of nonestoppel of a township to enforce its
zoning ordinance, hereby expressly affirmed, nevertheless may
not be applied against a party who has in good faith obtained
a building permit for a nonconforming use in the district in
which the property is located, erected expensive, specialty type
animal kennel buildings pursuant thereto and with newspaper
and posting publication thereof, which took 10 weeks to erect,
and suit to enjoin operation was not brought until 10-1/2
months later, it being contrary to equity and good conscience
to grant an injunction for enforcement under such exceptional
circumstances (Pittsfield Township Zoning Ordinance, arts
7–11).

SEPARATE OPINION.

BLACK, J.

5. NUISANCE—ABATEMENT—NONCONFORMING USE UNDER ZONING OR-
DINANCE—TOWNSHIPS—EQUITY.

*Plaintiff township to which defendants had applied for and
been issued a dog kennel building permit in light manufactur-
ing district wherein it was not a permissible use, and who had
erected an expensive building and conducted business therein
for 10-1/2 months before suit was commenced to declare the
nonconforming use a nuisance and abate it* held, *not entitled
to such relief, since a governmental unit which comes into the
equity forum stands no higher than, nor is it preferred over,
any other party.*

Appeal from Washtenaw; Beer (William J.), J.,
presiding. Submitted June 3, 1964. (Calendar No.
16, Docket No. 50,589.) Decided April 9, 1965.

Complaint by the township of Pittsfield, a Mich-
igan municipal corporation, against Karl Malcolm,
Jr., and Sarah J. Malcolm to declare their use of
certain land a nuisance and to enjoin their continu-

ing use of the land. Judgment for defendants. Plaintiff appeals. Affirmed.

*Douglas K. Reading,* for plaintiff.

*Conlin, Conlin, Parker, McKenney & Wood* (*Chris L. McKenney,* of counsel), for defendants.

SMITH, J. After securing a letter from the township supervisor expressing his opinion that construction of a dog kennel upon their property was permissible under the zoning ordinance, defendants filed application for a building permit with the township building inspector. Notice was published in a newspaper of general circulation in the township. The application was approved May 8, 1962, by the building inspector who thereupon issued a building permit, which was posted on the premises during construction. Defendants commenced building immediately and completed the structure on or about July 20, 1962, at a cost of $45,000. Since completion, they have operated the kennel for boarding dogs and cats, and for allied services.

Although the township building inspector issued the permit to defendants, the township municipal corporation brought suit against defendants June 4, 1963, some 10-1/2 months after the building had been completed and in use as a kennel. The township does not claim that defendants violated the building permit, but that the permit was erroneously issued by the township building inspector because at all times since adoption of the township zoning ordinance in 1950, defendants' property has been zoned "M-1 Light Industrial" under which an animal kennel is not permitted, the township asserts. In the complaint, permanent injunction is sought. In their answer, defendants allege the sequence of events

above stated but deny that "M–1 light industrial" zoning prohibits such an animal kennel. If interpreted as to prohibit such use, they say then that the ordinance is unreasonable. By way of affirmative defense, defendants plead waiver, estoppel, and laches, pointing up their reliance upon the supervisor's opinion and the authority of the building permit obtained by them before commencing to build. There is no question of fraud or bad faith, either on the part of the municipal officers or the defendants. It is agreed that both acted in good faith.

# I

The first question is whether or not such an animal kennel is a permissible use under this zoning ordinance. The ordinance divides the township into 7 zones or use districts from the most restrictive to the least restrictive as follows:

Residence district ........................ R–1
Residence district ........................ R–2
General farming and residence district ..... A–1
Small farm and residence district ......... A–2
Local retail business district .............. C–1
General commercial district ............... C–2
Light industrial district ................. M–1

It should be noted that for each district, *use regulations* contain the following text: *"No building or structure or part thereof shall be erected, altered, or used, or land or premises used in whole or part for other than one or more of the following specified uses."* In addition to specifying uses in this manner, the ordinance has a scheme, commonly employed, of cumulating uses of prior sections in each succeeding section, with certain exceptions, however, noted below.

Use regulations for the "M–1 light industrial" district are contained in section 11.1, article 11, of

the Pittsfield township zoning ordinance. It reads in part as follows:

"No building or structure or part thereof shall be erected, altered, or used, or land or premises used in whole or part for other than one or more of the following specified uses: * * * [specified uses are listed in paragraphs 1 through 4]

"5. *Any uses permitted in C–2 general commercial districts except dwellings.*" (Emphasis supplied.)

It is not contended that any of the specified uses omitted in the quotation immediately above have any bearing on this case, but that the authority, if any, for erection and use of a dog kennel is contained in "C–2 general commercial" zoning, insofar as uses therein are cumulated in paragraph 5.

As to uses permissible under "C–2 general commercial" zoning, we quote from section 10.0 of article 10 of the zoning ordinance:

"No building or structure or part thereof shall be erected, altered, or used, or land or premises used in whole or part for other than one or more of the following specified uses:

"1. All uses permitted in C–1 districts.

"2. Stores and shops for the conduct of any retail and wholesale business including testing and research laboratories, open air sales or display of motor vehicles, parking lots, laundries, dry cleaning establishments, milk receiving and distributing plants, cartage warehouses and yards, truck line terminals, contractors equipment and storage yards, hatcheries, lumber yards *and uses similar in character to the above permitted uses,* but not including businesses handling wastes, junk, the slaughtering of animals *and those businesses which are offensive by reason of odor, noise, smoke or vibration to the district* in which they are located, or to adjacent zoning districts.

"3. Motels, tourist cabins and trailer parks.

"4. Offices of professional, philanthropic, industrial and commercial enterprises.

"5. Accessory buildings and uses customarily incident to any of the above uses." (Emphasis supplied.)

Referring to C–2 uses thus enumerated and permissible in M–1 districts by cumulation, defendants argue that where the ordinance employs the language "and uses similar in character to the above permitted uses" this empowered the trial court to find that animal kennels were permissible under this section of the zoning ordinance. They say that an animal kennel is "similar in character" to a hatchery and "no more offensive than a truck line terminal or milk processing plant."

But there is more to analysis of the ordinance than what defendants claim, because animal kennels are specifically permitted uses in other sections of the zoning ordinance, that is, under A–1 and A–2 classifications, and it is important to note that uses under A–1 and A–2 classifications are not cumulated under any other sections of the zoning ordinance. This is to say, that A–1 and A–2 uses are not cumulated under lower classifications C–1, C–2, or M–1, and patently not under higher classifications R–1 or R–2 either. Let us turn then to those sections of the ordinance dealing *specifically* with animal kennels. One such section is that pertaining to "A–1 general farming and residence" zoning contained in article 7 of the ordinance and which reads in part as follows:

"*No building or structure* or part thereof shall be erected, altered, used, or land or premises used in whole or part for *other than one or more of the following specified uses:* * * *

"4. Churches, schools, parks, cemeteries, golf courses, airports, community buildings, hospitals,

riding stables, broadcasting stations, livestock auction yards, *animal kennels,* sanitary fills, and gravel pits, *provided that the location, erection and use shall have been approved by the township zoning board after public notice given in a newspaper of general circulation in the township of a statement of the proposed use* and location and the time of a hearing thereon. If, on such hearing, it shall appear that the proposed location, erection, or use be detrimental to the public health, safety, or general welfare, or the character of the neighborhood wherein it is proposed to locate such use, then such use shall be denied." (Emphasis supplied.)

Now in addition to the specific reference to animal kennels in A–1 zoning above, reference to animal kennels is also made in the section of the zoning ordinance devoted to A–2 uses. We quote from article 8 of the zoning ordinance:

*"No building or structure* or part thereof shall be erected, altered, or used, or land or premises used in whole or part for *other than one or more of the following specified uses:*  *  *  *

6. Riding stables, *animal kennels and hospitals provided however that buildings housing animals be at least 100 feet from all property lines and that the lot have an area of not less than 5 acres."* (Emphasis supplied.)

No other reference is specifically made to animal kennels in the ordinance except as above quoted under A–1 and A–2 uses.

A similar zoning ordinance was construed in *Fass* v. *City of Highland Park,* 326 Mich 19.[1] This Court said (p 24):

---

[1] " 'Section 8.  B2 districts
'The following regulations shall apply in all B2 districts:
'Sec. 8.1  Uses permitted
'*No building, structure, or part thereof, shall be erected,* altered, or used, or premises used, in whole or in part, for other than one or more of the following specified uses:  *  *  *

"It will be noted that the *language of the ordinance* with reference to uses permitted in 'B2' districts *expressly forbids the use of premises in any such district for the purpose or purposes not specified.* The sale of live poultry cannot be regarded as accessory to the operation of 'generally recognized retail stores.' We do not understand plaintiffs to contend that such stores, as a matter of general practice, sell live poultry. *The conclusion cannot be avoided that none of the specified purposes for which property in 'B2' districts may be used includes the business of handling live poultry. Such being the case, the use in question must be regarded as expressly prohibited by the language of the ordinance, above quoted. It is further significant that such an operation is expressly sanctioned in 'C' districts.* The language of the ordinance is not ambiguous and indicates clearly an intent to define with care the rights of property owners in the various districts within the city." (Emphasis supplied.)

The same conclusion must be drawn as to the ordinance in the instant case. None of the specified purposes for which property in the M–1 district, or districts cumulated thereunder, includes animal kennels. Under the ordinance which specifically sets forth permissible uses under each zoning classification, therefore, absence of the specifically stated use must be regarded as excluding that use. This is especially true where the use is expressly per-

---

'2. Generally recognized retail stores.  *  *  *

'17. Uses accessory to any of the above permitted uses.  *  *  *

'Section 10.  C districts

'The following regulations shall apply in all C districts:

'Sec. 10.1  Uses permitted

'*No building, or structure, or part thereof, shall be erected,* altered, or used, or premises used, in whole or in part, for other than one or more of the following specified uses:  *  *  *

'5. Facilities for the handling and sale of poultry or game, including storage and killing of same, for sale on the premises exclusively at retail, such use to be subject to the approval of the board.

'6. Uses accessory to any of the above permitted uses.' " (Emphasis supplied.)  *Fass v. City of Highland Park,* 326 Mich 19, 23.

mitted under other classifications: A–1 and A–2. We conclude as in *Fass, supra* (p 24) that "The language of the ordinance is not ambiguous and indicates clearly an intent to define with care the rights of property owners in the various districts within the city." Animal kennels are, therefore, not permissible under the M–1 classification and are only permissible under A–1 and A–2 classifications.

As to defendants' argument that animal kennels are also permissible under M–1 because such are "similar in character" to a hatchery and "no more offensive than a truck line terminal or milk processing plant," we are constrained to say that this argument might be more persuasive had not the ordinance specifically provided for animal kennels in A–1 and A–2 districts. The intent is clear and it is to provide for animal kennels in zoning areas A–1 and A–2. Our duty is to give effect to this manifest intention.

As to defendants' other assertion that if the ordinance is construed to prevent use of their property for an animal kennel under present M–1 zoning then the ordinance is unreasonable, we say that this argument must also fail. We do not understand defendants to contend that the ordinance is unreasonable on its face, nor do we find it so. What is left is whether proofs show it to be, the burden being upon the defendants. No proofs were offered, so that we are left with the bald assertion of unreasonableness which we can leave, in turn, without further comment, except to hold that under such circumstances, defendants obviously failed to sustain the burden of proof.

We conclude, therefore, that plaintiff's position with regard to interpretation of the zoning ordinance was correct, not that of defendants or the trial judge.

II

. The more difficult question, however, is whether the township is estopped to enforce the ordinance under the circumstances herein presented. As to this point, plaintiff also relies upon the decision in *Fass* v. *City of Highland Park, supra.* The *Fass Case* was before this Court on 3 different occasions.

The first case of *Fass* v. *City of Highland Park,* 320 Mich 182, construed a city zoning ordinance. Where killing and dressing of live poultry was specifically authorized by ordinance in a manufacturing district, it was held that shopowners could not kill and dress poultry as an incident to the operation of a retail poultry market located in a commercial district zoned for "generally recognized retail stores and shops." The shopowners were thus limited to selling already-dressed poultry, et cetera, killed and dressed off the premises. In the second *Fass Case,* 321 Mich 156, rehearing of the first *Fass Case* was granted and limited to the question of constitutionality of the ordinance. The shopowners argued that the zoning ordinance as construed was arbitrary and unreasonable. In holding with the city this Court held the ordinance was constitutional. We said that the ordinance clearly intended that killing, defeathering and dressing of live poultry be confined to a district other than where plaintiff-shopowners had their retail store; that in the district where the store was located, dressed poultry could be sold but that such poultry could not be killed, defeathered, and dressed on the premises. We said that such activity (killing, defeathering, and dressing poultry) was a proper subject for municipal legislation, it bearing a distinct relationship to public health. We held also that killing and defeathering were not an incidental and integral part of a poultry market (p 162),

*"especially where the ordinance provides that this activity should be confined to another zone."*

Of particular relevance to the estoppel question was the third *Fass Case, supra.* It presented a somewhat different fact situation from the first 2 *Fass* cases. Under this, the third *Fass Case,* plaintiffs were seeking only *to sell live poultry* (not to kill and dress) along with already-dressed poultry. On appeal, the first question was whether under the zoning ordinance live poultry could be sold in plaintiffs' store zoned for "generally recognized retail stores," and "uses accessory" thereto. This Court pointed out that the ordinance expressly forbade such uses not specified in each appropriate section of the ordinance; that sale of live poultry was not specified, nor could it be said that sale of live poultry was "accessory" to the operation of a "generally recognized retail store."

Plaintiffs also claimed estoppel against the city. Plaintiffs showed that for 3 years prior to refusal, city officials had issued shop licenses under a retail shop licensing ordinance authorizing the sale of live poultry, among other things. When the license was refused, suit was instituted. The city asserted that the licenses had issued erroneously because the zoning ordinance precluded use of plaintiffs' premises for the sale of live poultry. This Court held that the city was not estopped from enforcing the zoning ordinance, although a building permit issued sometime earlier had authorized a building to be constructed for retail sale of both dressed and live poultry and annual operating licenses for same had issued for each of 3 years prior to refusal. It should be pointed out that the annual operating license, required to operate such a retail store, was predicated in part, at least, upon an interpretation by city officials that the ordinance did not prohibit use

of such premises for the sale of live poultry, an interpretation later found to be in error.

This Court distinguished the *Fass Case* from cases cited by plaintiffs in which the question of retroactivity of zoning regulations impinged upon vested rights of persons who had commenced construction upon the authority of prior regulations. Cf., *Sandenburgh* v. *Michigamme Oil Co.*, 249 Mich 372; *Adams* v. *Kalamazoo Ice & Fuel Co.*, 245 Mich 261; *City of Lansing* v. *Dawley*, 247 Mich 394; and *City of Coldwater* v. *Williams Oil Co.*, 288 Mich 140.[2]

As the Court said in third *Fass* (p 27), "The zoning ordinance of defendant city was in force and effect at the time plaintiffs purchased their real estate and erected the building thereon," therefore, retroactivity was not an issue. We concluded in *Fass*, then, that the city would not be estopped from enforcing the zoning ordinances, under the circumstances, because plaintiffs "were charged with knowledge of the restrictive provisions of the ordinance" and, thereby, with the nature and extent of duties and powers of city officials acting under said ordinance. Enforcement of the ordinance was, therefore, permitted.

Although the principle of nonestoppel was clearly enunciated in third *Fass*, there was, however, a clear intimation that the doctrine of nonestoppel of a municipality in the field of zoning is not without exception. The opinion of Justice CARR makes this plain by the following statement twice recited (pp 26, 31): "No claim is made that the building erected by plaintiffs, or the equipment therein, cannot be utilized for the transaction of a permissible business." The opinion expressed undoubted awareness of an exceptional circumstance which could militate

---

[2] See also a later case, *Expert Steel Company* v. *City of Clawson*, 368 Mich 619.

against application of the rule. Without the slightest discredit to the rule itself, which rule we expressly affirm, nevertheless this particular case presents exceptional circumstances.

There are other jurisdictions which have recognized that under exceptional circumstances a municipality may be estopped from enforcing a zoning regulation where municipal authorities had previously issued a permit later found to be contrary to zoning law. Several cases will suffice to show circumstances requiring exceptions to the general rule.

In *District of Columbia* v. *Cahill*, 60 App DC 342, (54 F2d 453), where the owner of property made large expenditures to improve a garage residence located in a residential district, relying upon a building inspector's permit, it was held that where a party acting in good faith under affirmative acts of the city and where the improvements made were expensive and permanent, it would be highly inequitable and unjust to permit destruction of such rights. The city was estopped and permanently enjoined.

In *Tankersley Brothers Industries, Inc.,* v. *City of Fayetteville,* 227 Ark 130 (296 SW2d 412), action was brought by the city and 2 property owners to enjoin uses of a commercial building and to remove said building. In this case, defendant obtained a building permit to construct a commercial building. It was constructed under general supervision of city agents. After 4 months of operations, the city and property owners brought suit claiming several violations of zoning regulations, including a claim that a wholesale business could not be operated from the premises. There being no evidence of fraud, the court held that the city had (p 134) "stood by too long and is now equitably estopped to have the

building removed or to deny appellant the right to operate wholesale."

We regard the circumstances as so exceptional in this case as to require an exception be made to the general rule. Here, the good faith of all parties is acknowledged. No collusion between the property owners and city officials is proved or even suggested. Notice that an animal kennel was to be built on said premises was given by newspaper and by the posting of the building permit on the premises while the kennel was under construction. By reason of the special type of building and appurtenant fences of the cage or kennel variety, anyone in the area would be put upon notice that construction of some unusual kind was taking place. Defendants have spent $45,000 for a specialty type building of otherwise doubtful utility. In addition, plaintiff waited over 10 months after construction, occupancy and operation before challenging defendants' right to continue using the building as an animal kennel. While no factor is in itself decisive of the case, the entire circumstances, viewed together, present compelling reasons why equity should refuse plaintiff's request for injunction. To do otherwise would be contrary to equity and good conscience. See *Spoon-Shacket Co., Inc.,* v. *Oakland County,* 356 Mich 151.

Affirmed. Costs to defendants.

T. M. KAVANAGH, C. J., and DETHMERS, KELLY, SOURIS, O'HARA, and ADAMS, JJ., concurred with SMITH, J.

BLACK, J. ( *concurring in affirmance* ). This being an equity case, and the equities being all one way, I would affirm on ground that the plaintiff town-

ship stands at equity's fount in no better position than would a similarly situated private suitor.*

Having issued the permit and having encouraged defendants to proceed as they did, the township, even though free technically from estoppel, is not entitled to abatement—that is, destruction—by equity's process of defendants' expensively constructed and manifestly valuable business. By the quoted rule there is a limit, to the sometimes legally superior rights of a sovereign State and its various units of government, when that State or any such unit comes into a court of equity to assert a claim. In that forum at least no party stands higher than nor preferred over any other party.

I concur in affirmance.

---

\* "When the United States [here the plaintiff township] comes into court to assert a claim, it so far takes the position of a private suitor as to agree by implication that justice may be done with regard to the subject matter." (Quotation from *Hunt* v. *State Highway Commissioner,* 350 Mich 309, 321, following *United States* v. *Norwegian Barque "Thekla,"* 266 US 328 [45 S Ct 112, 69 L ed 313].)

See application of this principle to *Auditor General* v. *Klenk,* 367 Mich 65, 70.