*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LINDSEY DEZMAN and JON GEIGER,

      Plaintiffs-Appellants,

v

CHARTER TOWNSHIP OF BLOOMFIELD and
CHARTER TOWNSHIP OF BLOOMFIELD
BOARD OF ZONING APPEALS,

      Defendants-Appellees.

UNPUBLISHED
June 27, 2024

No. 360406
Oakland Circuit Court
LC No. 2021-190703-AV

ON REMAND

Before: PATEL, P.J., and CAVANAGH and REDFORD, JJ.

PER CURIAM.

Our Supreme Court reversed this Court's judgment[1] which held that plaintiffs were not required to seek a variance to keep chickens and a coop on their residential property. Our Supreme Court explained that Zoning Ordinance § 42-3.1.3(B)(i) and (vi) states "what activities are permitted at the one-family detached dwelling on plaintiffs' property: accessory uses and accessory structures customarily incidental to one-family detached dwellings[,]" and that, under *Pittsfield Twp v Malcolm*, 375 Mich 135, 142; 134 NW2d 166 (1965), where an ordinance specifically sets forth permissible uses, in the absence of a specifically stated use under a zoning classification, the ordinance excludes that use. *Dezman v Charter Twp of Bloomfield*, ___ Mich ___; 997 NW2d 42 (2023). The Court remanded this matter for consideration whether the circuit court erred by affirming the Charter Township of Bloomfield Zoning Board of Appeals (ZBA) decision denying plaintiffs' request to keep chickens in a chicken coop on their property. We

---

[1] *Dezman v Charter Twp of Bloomfield*, unpublished per curiam opinion of the Court of Appeals, issued June 1, 2023 (Docket No. 360406).

-1-

incorporate herein by reference our summary of the facts and proceedings and the statement of the applicable standard of review set forth in our previous opinion.

Because we conclude the circuit court did not err by affirming the ZBA's decision to deny plaintiffs' request to keep chickens and a coop on their residential property because the accessory use and accessory structures did not comply with Zoning Ordinance § 42-7.6.6, we affirm.

## I.  THE ZONING ORDINANCE
## AND FUNCTION OF THE ZONING BOARD OF APPEALS

Under Bloomfield Township Zoning Ordinance § 42-3.1.3, permitted uses of R-3 one-family residential land in relevant part includes: (i) one-family detached dwellings, (ii) farms, and (vi) accessory uses and accessory structures customarily incidental to any of the permitted uses.[2] Plaintiffs' property featured a one-family detached dwelling and did not constitute a farm.[3] Section 42-1.4 states: "No building or structure, or part thereof, shall hereafter be erected, constructed or altered and maintained, and no new use or change shall be made or maintained of any building, structure or land, or part thereof except in conformity with the provisions of this Chapter."  Under § 42-5.1, any accessory structure customarily incidental to any permitted use under § 42-3.1.3 must, among other conditions, be in a rear yard, may not occupy more than 25% of the rear yard, may not be within 16 feet of any side or rear lot line, and may not exceed 14 feet in height.  Section 42-5.1 specifies that erection of any accessory structure requires ZBA review and approval, and the ZBA is charged with determining whether the structure meets the requirements of § 42-7.6.6.

Although plaintiffs argued that keeping chickens and having a coop did not require them to obtain a zoning variance, the record reflects that plaintiffs never sought a zoning variance.  When issued a zoning violation, they appealed it to the ZBA and requested permission to have chickens and a coop on their R-3 zoned residential property.  Consequently, the variance standard under § 42-7.6.5.C does not apply.[4]  Plaintiffs' request sought permission respecting an accessory use

---

[2] Section 42-2.2.1 defines "accessory use and accessory" as "a use which is clearly incidental to, customarily found in connection with, and (except in the case of accessory off-street parking spaces or loading) located on the same zoning lot as, the principal use to which it is related."  The term "accessory use" including but not limited to 10 specified uses for, among other things, servant or caretaker residential accommodations, recreational facilities, domestic or agricultural storage barns, sheds, tool rooms or similar accessory buildings or structures, storage facilities related to business operations, parking, industrial or commercial operations, and signage.

[3] Section 42-2.2.31 defines a farm as land not less than 40 acres that operates as greenhouses, nurseries, orchards, chicken hatcheries, or apiaries.

[4] Section 42-7.6.5 in relevant part provides:

C.  Variance.  To authorize, upon an appeal, a variance from the strict applications of the provisions of this Chapter where by reason of exceptional narrowness, shallowness, shape or area of a specific piece of property at the time of enactment of ordinance from which this Section is derived or by reason of

and accessory structure.  For their request to be permissible under the zoning ordinance, the proposed use and accessory structure needed to be one customarily incidental to any of the permitted uses in compliance with § 42-5.1, subject to the ZBA's review and approval, and its finding that such complied fully the standards set forth in § 42-7.6.6.  See § 42-5.1.6.  Section 42-7.6.6 provides:

> Standards.  Each case before the Zoning Board of Appeals shall be considered as an individual case and shall conform to the detailed application of the following standards in a manner appropriate to the particular circumstances of such case.  All uses as listed in any district requiring Board approval for a permit shall be of such location, size, and character that, in general, it will be in harmony with the appropriate and orderly development of the district in which it is situated and will not be detrimental to the orderly development of adjacent districts.  The Board shall give consideration to the following:

> A.  The location and size of the use.

> B.  The nature and intensity of the operations involved in or conducted in connection with it.

> C.  Its size, layout and its relation to pedestrian and vehicular traffic to and from the use.

> D.  The assembly of persons in connection with it will not be hazardous to the neighborhood or be incongruous therewith or conflict with normal traffic of the neighborhood.

> E.  Taking into account amount [sic] other things, convenient routes of pedestrian traffic, particularly of children.

> F.  Vehicular turning movements in relation to routes of traffic flow, relation to street intersections, site distance and the general character and intensity of development of the neighborhood.

---

exceptional topographic conditions or other extraordinary or exceptional conditions of such property, the strict application of the regulations enacted would result in peculiar or exceptional practical difficulties to, or upon the owner of such property, provided such relief may be granted without substantially impairing the intent and purpose of this Chapter.  In granting a variance the Board may attach thereto such conditions regarding the location, character, and other features of the imposed uses as it may deem reasonable in furtherance of the purpose of this Chapter.  In granting a variance, the Board shall state the grounds upon which it justifies the granting of a variance.

G. The location and height of buildings: the location, nature and height of walls, fences and the nature and extent of landscaping of the site shall be such that the use will not hinder or discourage the appropriate development and use of adjacent land and buildings or impair the value thereof.

H. The nature, location, size and site layout of the uses shall be such that it will be a harmonious part of the district in which it is situated taking into account, among other things, prevailing shopping habits, convenience of access by prospective patrons, the physical and economic relationship of one type of use to another and characteristic.

I. The location, size, intensity and site layout of the use shall be such that the operations will not be objectionable to nearby dwellings, by reason of noise, fumes or flash of lights to a greater degree than is normal with respect to the proximity of commercial to residential uses, will not interfere with an adequate supply of light and air, nor increase the danger of fire or otherwise endanger the public safety.

## II. ANALYSIS OF PLAINTIFFS' ARGUMENTS

Plaintiffs argue that, because the township's ordinance is silent on keeping chickens, they should be free to do so and have a chicken coop on their property. They point out that the general ordinance regulates dog, cat, and horse ownership but does not say anything about chickens.[5] Notably, the zoning ordinance is silent on pets and the keeping of animals on residential zoned properties. Defendants argue that, under *Pittsfield Twp*, 375 Mich 135, because the zoning ordinance does not expressly provide for chickens kept at one-family detached dwellings, such are necessarily excluded. In our previous opinion, we considered that argument and explained:

In *Pittsfield Twp*, the relevant ordinance stated: " 'No building or structure or part thereof shall be erected, altered, used, or land or premises used in whole or part for other than one or more of the following specified uses. . . .' " *Id*. at 140. Based on the ordinance's language, our Supreme Court held: "Under the ordinance which specifically sets forth permissible uses under each zoning classification, therefore, absence of the specifically stated use must be regarded as excluding that use." *Id*. at 142-143. Thus, if an ordinance contains language expressly limiting use of the land only to the uses listed in the ordinance, a landowner may not use the land for unlisted purposes. [*Dezman*, unpub op at 5.]

We found *Pittsfield Twp* distinguishable from the case at bar because the zoning ordinance language at issue differs substantively from that in *Pittsfield Twp* which expressly specified the *only* permitted uses allowed; whereas, the zoning ordinance in this case is far less restrictive and

---

[5] See Bloomfield Township Ordinance §§ 8-8.32-48 (dogs); §§ 8-8.70-92 (cats); and § 42-4.12 (horses).

does not set forth such a list of the only permissible uses under the zoning classification. *Dezman*, unpub op at 5. Our Supreme Court's remand order indicates we should consider *Pittsfield Twp* differently and deem that the absence of reference to chicken-keeping in the zoning ordinance at issue means such is necessarily excluded. As we previously observed, the zoning ordinance at issue lists three applicable uses but does not designate or expressly limit what activities may be conducted at R-3 residential zoned properties within those three uses. Section 42-3.1.3.B in relevant part states that one can use R-3 one-family residential land under subpart (i) for one-family detached dwellings, and under subpart (vi) for accessory uses and accessory structures customarily incidental to any of the permitted uses.[6]

Plaintiffs argue that the ZBA abused its discretion by engaging in an uneven application of the zoning standards. According to plaintiffs, the ZBA did not consider lot size, shape, or unique features of the land for other applicants, including for the applicant on Aldgate Drive, whose request was considered at the ZBA hearing on August 10, 2021. Plaintiffs further contend that the ZBA has not denied a variance to keep hens in the past seven years. Plaintiffs assert that their parcel of land is four times larger than the Aldgate parcel, yet the ZBA granted that request without regard to the neighbors' health concerns or the unique features of the land.

At the September 14, 2021 ZBA meeting, the ZBA made the following determination regarding plaintiffs' request:

> Based on the information presented, the applicant did not demonstrate compliance with Section 42-7.6 standards because the use of the accessory structure is inappropriate for the neighborhood and the location will hinder and discourage the adjacent neighbor to live in harmony on their property due to issues associated with the proposed use.

Respecting the request on Aldgate Drive, the ZBA determined on August 10, 2021:

> Based on the information presented, the applicant did demonstrate compliance with Section 42-7.6 standards because it will not hinder or discourage the use of adjacent property. Based on the information presented, the applicant did demonstrate all of the standards for practical difficulty because compliance with the strict letter of the ordinance would be unduly burdensome because there they have three front yards. There is no injustice to the adjoining neighbors because the chickens have resided at the home for over three years with no issues. Unique circumstances exist with the property since it has three frontages and that is not self created. Application for permits must be made within 5 business days for the existing chickens and coops. Additional screening may be required to screen from public view. The approval is

---

[6] Although application of the *Pittsfield Twp* principle could lead to the conclusion that plaintiffs needed a variance for keeping chickens and having a coop for them, because they never sought one and requested permission to do so, as others apparently successfully did, we believe the focus should be on the permission decision process. Irrespective of whether plaintiffs could qualify for a variance, the erection of an accessory structure incidental to a permitted use nevertheless required review and approval by the ZBA of such structure's compliance with § 42-7.6.6.

for 8 years until 8-10-29 and chickens can remain on the site for the remainder of their life cycle and cannot be replaced.

The minutes demonstrate that the ZBA applied the same standard in the Aldgate case as it did in this case by considering in both cases whether the applicant complied with § 42-7.6.6, a necessary prerequisite to accessory uses and erection of accessory structures incidental to permitted uses. The record reflects that the ZBA considered lot size, shape, and unique features of the land in the Aldgate case. The ZBA further considered the impact on the neighbors and the visibility of the chicken coop in that case. Although the ZBA reached a different result in the Aldgate case, plaintiffs fail to establish that the ZBA did not apply the proper procedure or abused its discretion by arbitrarily applying the zoning ordinance in this case. The record indicates that the ZBA considered the standards and based its determination on the evidence presented. The question then is whether substantial evidence on the record supported the ZBA's determination in this case. The fact that the ZBA granted permission requests for chicken coops in other instances does not establish that the ZBA acted arbitrarily in this case. Plaintiffs have not provided all of the facts underlying those determinations, so they cannot establish by comparison that the ZBA acted improperly or arbitrarily, or abused its discretion in this case.

Plaintiffs argue that the ZBA impermissibly relied on less than a scintilla of evidence, their next-door neighbor's unsubstantiated and speculative allegations that she and her family would suffer health problems and would see the chicken coop in the winter months. The record indicates that the neighbor, Gracey, spoke at the August 10, 2021 hearing in opposition to the chicken coop. The ZBA did not vote on the issue at that hearing but tabled the decision until the full board could consider the request. Gracey spoke again at the September 14, 2021 hearing and asserted that "the chickens would create allergy and respiratory issues for her family, attract pests, create odor, and the chicken coop would be visible from her property[.]" Gracey also submitted a letter in opposition to plaintiffs' request, stating that the chicken coop "is only partially covered by the arborvitae trees" and she and her family "can still see it." She complained that, in the winter months, the coop "will remain largely uncovered and clearly visible." She asserted that she and her family members had severe allergies that would be affected by dander from the chickens and the dust created by the chickens, which "dig holes" in order to "dust bathe." Gracey referred to the coop as being "unsightly," causing "extreme odor nuisance" from the ammonia, causing constant noise nuisance, creating a risk of encounters with predators, creating a risk of disease, and decreasing property values.

Plaintiffs argue that Gracey provided no medical documentation in support of her claim that she and her family had allergies. Plaintiffs, however, fail to establish that medical documentation must be provided at a ZBA hearing for a ZBA to find substantial evidence to support its determination. Moreover, Gracey's claims of allergies involve a credibility determination. "[I]f the administrative findings of fact and conclusions of law are based primarily on credibility determinations, such findings generally will not be disturbed because it is not the function of a reviewing court to assess witness credibility or resolve conflicts in the evidence." *Dep't of Community Health v Risch*, 274 Mich App 365, 372; 733 NW2d 403 (2007). Accordingly, we must defer to the ZBA's credibility determination. We also note that plaintiffs' argument is factually incorrect. Plaintiffs suggest that Gracey expressed concern merely about the animal dander. Her letter, however, clarified that she also had concerns about the dust created by chickens. Further, contrary to plaintiffs' contention, the fact that Gracey's family has two dogs does not

necessarily diminish the credibility of her statements regarding her and her family members' allergies.

Plaintiffs also argue that Gracey provided no evidence in support of her claim that the arborvitaes will thin in the winter and that she will possibly see the chicken coop. This issue, however, also involved a credibility determination by the ZBA to which we give deference. The record also indicates that plaintiffs misstate Gracey's position. She did not state that she would *possibly* see the coop in the winter; she stated that the coop was visible and only partially covered by the arborvitae trees, and would be clearly visible in the winter months when the arborvitaes are not as full. Plaintiffs focus on whether arborvitaes thin in the winter. Anania opined that the trees provided year-round coverage. Gracey, however, asserted that the coop could be seen from her property during the entire year. Obviously, the ZBA had to make credibility determinations in this regard. As this Court has explained, the primary reason for deference to the ZBA is "its members are local residents who reside in the township and who possess a much more thorough knowledge of local conditions, current land uses, and the manner of future development desirable for those who reside in the township." *Szluha v Charter Twp of Avon*, 128 Mich App 402, 410; 340 NW2d 105 (1983).

Plaintiffs rely on *Henry v Dow Chemical Co*, 473 Mich 63, 72; 701 NW2d 684 (2005), in support of their assertion that speculative claims of future harm are insufficient. In *Henry*, the Court stated that "[i]f plaintiffs' claim is for injuries they may suffer in the future, their claim is precluded as a matter of law, because Michigan law requires more than a merely speculative injury." *Id*. The Court in *Henry*, however, described the injury required to support a negligence claim, not the substantial-evidence test respecting a ZBA decision. *Henry*, therefore, is inapposite.

III. CONCLUSION

The record reflects that the ZBA's decision is supported by competent, material, and substantial evidence. The ZBA relied on the information provided by Gracey to conclude that "the use of the accessory structure is inappropriate for the neighborhood and the location will hinder and discourage the adjacent neighbor to live in harmony on their property due to issues associated with the proposed use." As such, the accessory structure failed to comply with § 42-7.6.6. Plaintiffs focus only on the issues of Gracey's allergies and the visibility of the chicken coop, but Gracey listed several other ways in which the chicken coup would hinder her use of her property and ability to live in harmony, including the odor, noise, risk of predators, risk of disease, and decreased property values. Although Anania disagreed with Gracey and expressed support for plaintiffs having the chicken coop, the information provided by Gracey supported the ZBA's factual findings which must be affirmed, even if alternative findings could have been supported by the record.

Finally, although plaintiffs do not challenge the sufficiency of the ZBA's findings, the ZBA did not "merely repeat the conclusionary language of the zoning ordinance without specifying the factual findings underlying the determination that the requirements of the ordinance were satisfied in the case at hand." *Reenders v Parker*, 217 Mich App 373, 378-379; 551 NW2d 474 (1996). Even though the ZBA did not address each requirement listed in the ordinance, not all were applicable. See § 42-7.6.6. The circuit court appropriately reviewed the record and applied correct legal principles. The circuit court did not misapprehend or grossly misapply the substantial-

evidence test to the ZBA's factual findings.  Accordingly, we hold that the circuit court did not err by affirming the ZBA's decision to deny plaintiffs' request to keep chickens and a coop on their residential property because the accessory use and accessory structures did not comply with § 42-7.6.6.

Affirmed.

/s/ Sima G. Patel
/s/ Mark J. Cavanagh
/s/ James Robert Redford