RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0167p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

GOLF VILLAGE NORTH, LLC; TRIANGLE PROPERTIES, INC.,

  *Plaintiffs-Appellants,*

  *v.*

CITY OF POWELL, OHIO; DAVID BETZ, in his official capacity as Powell's Director of Development,

  *Defendants-Appellees.*

┐
│
│
│
│  No. 21-3728
│
│
│
│
┘

─────────────────

Appeal from the United States District Court for the Southern District of Ohio at Columbus.
No. 2:16-cv-00668—Michael H. Watson, District Judge.

Decided and Filed:  August 2, 2022

Before:  STRANCH, DONALD, and THAPAR, Circuit Judges.

─────────────────

## COUNSEL

─────────────────

**ON BRIEF:**  Joseph R. Miller, Christopher L. Ingram, Elizabeth S. Alexander, VORYS, SATER, SEYMOUR AND PEASE LLP, Columbus, Ohio, for Appellants.  Yazan S. Ashrawi, Jeremy M. Grayem, FROST BROWN TODD LLC, Columbus, Ohio, for Appellees.

─────────────────

## OPINION

─────────────────

THAPAR, Circuit Judge.  Penny wise, pound foolish.  That's a lesson Golf Village has learned the hard way.  The developer wants to build a "residential hotel" on its property in Powell, Ohio.  But it never filed the required zoning application.  Instead, it demanded the City confirm this use was allowed before it went through the effort.  The City refused to do so without

an application.  Golf Village has challenged that decision in every tribunal available.  It now argues the refusal violated procedural and substantive due process.  The refusal didn't.  So, despite years of costly litigation, Golf Village is back to the beginning:  It must file a zoning application to get an answer.

I.

Triangle Properties, Inc. and its subsidiary, Golf Village North LLC, (collectively, Golf Village) bought over 900 acres of property in Powell, Ohio.  Golf Village wanted to build a comprehensive development that would include a golf course, a retail center, residences, and offices.  But it needed to rezone most of the land to make that vision a reality.  So it struck a deal with the City.  The City would rezone the land according to a development plan submitted by Golf Village if Golf Village would use private money to "plan, develop, and construct" the community's public infrastructure.  *Golf Vill. N. LLC v. City of Powell* (*Golf Vill. I*), 826 F. App'x 426, 428 (6th Cir. 2020).[1]

Over a decade later, Golf Village decided to build a "residential hotel" on two vacant parcels in the community.  The hotel would provide temporary housing for professionals on work assignments and similarly transient people.  To begin construction, Golf Village needed to obtain a zoning certificate from the City's zoning administrator, David Betz.  *See* Powell, Ohio, Code of Ordinances § 1135.02.  Eligibility for a certificate depends on whether the proposed construction complies with the "permitted uses" outlined in the development plan submitted years earlier.  If the residential hotel falls outside the permitted uses, Golf Village can apply for a modification.  Both the City and Liberty Township (where the property is located) would have to approve the modification for Golf Village to deviate from the plan.

Golf Village didn't think it needed a modification to build its residential hotel.  It believed the proposed development already fell within the property's permitted uses.  So it approached the City, and the parties went back and forth about the project.  Betz was skeptical.

---

[1]For ease of reference, we refer exclusively to Golf Village and the City of Powell.  We acknowledge that the parties at the time of the negotiations were Triangle Properties and Liberty Township, but these distinctions are not relevant to our analysis.  *Cf. Golf Vill. I*, 826 F. App'x at 427–29 (detailing the negotiations and change of land ownership).

He told Golf Village in an email that the proposed use, "in [the] Staff's opinion," does not "fall within the allowed zoning" as outlined in the development plan. R. 62-2, Pg. ID 763. He explained that both Liberty Township and the City would need to approve the development and suggested they might not. But he left the door open by saying "certainly [a modification] is a route to take." *Id.* Golf Village didn't request a modification or take any further action on the residential hotel for another two years.

Then in 2016, Golf Village sent a letter to Betz requesting he confirm the residential hotel is a permitted use of the property. Golf Village said it wanted a "prompt decision" so that it could "proceed with submitting a final development plan to the City of Powell for approval." R. 60-2, Pg. ID 534. It now describes this letter as a "Use Determination" application. Appellant Br. 7.

Betz responded a month later. He declined to make a so-called "use determination," saying it would be an "advisory opinion." R. 60-3, Pg. ID 537. He noted that the City's Code doesn't recognize a process for requesting such a determination and he outlined the problem with circumventing the Code's regular channels: It "places the Zoning Administrator in the position of opining on the application of the zoning code without the benefit of a full and complete application." *Id.* Betz directed Golf Village to file an "appropriate application" for a "Zoning Certificate approval" to get an answer. *Id.*

Golf Village didn't apply. According to Golf Village, the application could cost over a hundred thousand dollars to prepare and, given Betz's email, Golf Village believed it would be rejected unless it applied for a modification. So it wanted a firm answer before going through that process. It appealed Betz's refusal to the City's Board of Zoning Appeals. But in the City's eyes, there was "no appealable administrative action," since Golf Village hadn't applied yet. R. 60-4, Pg. ID 538. Once again, the City told Golf Village to submit an "appropriate application for Zoning Certificate approval." *Id.*

Still, Golf Village didn't apply. Rather, it appealed again—this time, to the Delaware County Court of Common Pleas. *See Golf Vill. N., LLC v. City of Powell*, No. 17 CAH040024, 2018 WL 456217, at *1 (Ohio Ct. App. Jan. 11, 2018). But the court dismissed the appeal for

lack of subject-matter jurisdiction, holding that there was no final order from which to appeal. *See id.* at \*3. The Ohio Court of Appeals affirmed, *id.* at \*1, and the Ohio Supreme Court denied review, *Golf Vill. N., LLC v. Powell*, 98 N.E.3d 296 (2018) (table).

Golf Village then headed to federal court. It sued the City under 28 U.S.C. § 1983 for violating its procedural- and substantive-due-process rights, among other claims not on appeal. The district court granted the City summary judgment. Golf Village appealed.

## II.

The Fourteenth Amendment protects against the deprivation of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Supreme Court has told us that this provision has not only a procedural component but a substantive one as well. Procedural due process covers what you might expect—process. It ensures that "the government provide 'fair procedure' when depriving someone of life, liberty, or property." *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012). By contrast, substantive due process protects against government actions that are "arbitrary and capricious" even if there are adequate procedural safeguards. *Id.* In both cases, the plaintiff must show that (1) it has a constitutionally protected interest, and (2) the state in some way deprived it of that interest.

In a prior appeal, we held that Golf Village has a constitutionally protected property interest in building a residential hotel. *See Golf Vill. I*, 826 F. App'x at 439. But we left open whether the City had unlawfully *deprived* Golf Village of that interest. *Id.* at 440. Today, we answer that question: It did not. Each of Golf Village's due-process theories—two procedural and one substantive—fails.

## A.

To prevail on its procedural-due-process claim, Golf Village must show (1) it had a constitutionally protected interest, (2) it was deprived of that interest, and (3) the state did not afford it adequate procedures. *Paterek v. Vill. of Armada*, 801 F.3d 630, 649 (6th Cir. 2015). Golf Village argues that it was deprived of its protected interest without adequate process in two ways. We address each in turn.

1.

First, Golf Village contends that, under the City's Code, the zoning administrator (Betz) must issue a "use determination" as to whether a residential hotel is a permitted use of its property. But when it requested a "use determination," Betz refused. That refusal, Golf Village suggests, deprived it of its property interest without adequate process. Whether Golf Village is correct depends on whether it was in fact entitled to this procedure in the first place.[2]

Based on the plain language of the Code, it wasn't. Nothing in the City's Code suggests that Betz needed to issue a "use determination" before Golf Village submitted a zoning-certificate application. If anything, the Code suggests the zoning-certificate application *is* how Betz would determine whether a proposed use followed zoning and development-plan requirements.

Start with the process for approving new construction in Powell. Under the Code, anyone who wants to build a new building or structure must obtain a zoning certificate before starting construction. *See* Powell, Ohio, Code of Ordinances § 1135.02(a). The Code tasks the zoning administrator with issuing certificates, but it gives no discretion: The zoning administrator must issue a certificate if the proposed construction satisfies the Code and the relevant development plan. *Id.* §§ 1133.05(c), 1135.02(a). And he must do so within thirty days of receiving an application. *Id.* § 1135.04. If a project is denied a certificate because of noncompliance, the applicant may appeal or seek a conditional-use permit or variance with the Board of Zoning Appeals. *Id.* §§ 1133.12(a), 1135.02(a).

Based on these provisions, it's clear that the process for construction approval in Powell begins only *after* an applicant files a zoning-certificate application. The Code never mentions a "use determination" or any other process before the application. *See id.* § 1133.05. *See also generally id.* §§ 1101–1155. And Golf Village never applied. So it had no right to a decision about whether a residential hotel was a permitted use of its property.

---

[2]The City claims the Ohio state courts have already resolved whether Golf Village was entitled to a "use determination." Thus, the City argues, Golf Village may not relitigate that issue here. But the City never suggested to the district court that issue preclusion was relevant. It may not do so for the first time on appeal. *See Kusens v. Pascal Co.*, 448 F.3d 349, 368 (6th Cir. 2006).

Golf Village disagrees. It argues that the Code compels Betz to issue a "use determination" before it applies. It points to section 1127.02, which provides "all questions of interpretation and enforcement shall be first presented to the Zoning Administrator and . . . such questions shall be presented to the Board of Zoning Appeals only on appeal." *Id.* § 1127.02. According to Golf Village, this provision requires Betz to answer *all* questions about property use under the Code. It emphasizes the Code's mandatory language ("shall") and suggests that Betz has no discretion not to answer. And because there's no mention of an "application" in this provision, Golf Village thinks its failure to apply is irrelevant. In its view, Betz had to issue a "use determination" when Golf Village requested one via letter.

But Golf Village has it backwards. Section 1127.02 is part of a chapter entitled "Appeals and Variances." It doesn't outline the zoning administrator's responsibilities. It merely mandates that he address issues relating to "interpretation and enforcement" of the Code before those issues are reviewed by any other body, including the Board of Appeals. And presumably, those issues are presented to him in an application.

True, section 1127.02 doesn't mention an "application." But it doesn't outline any other process for addressing questions either. And another provision explains that the "procedure for deciding such questions shall be as stated in this section and this Zoning Ordinance." *Id.* § 1133.14(b). That means we are limited to the procedures specifically outlined in the Code. And the Code never describes a "use determination" or any other similar process. But it does detail the process for filing a zoning-certificate application. Thus, it is not unreasonable for the City to make "use determinations" during the zoning-certificate process.

This understanding tracks Betz's explicit responsibilities in the Code. *See id.* § 2233.05. The Code tasks the zoning administrator with, among other things, "enforcing . . . and interpreting the meaning and application" of the Code, "responding to questions concerning applications for amendments" to the Code's text, "issuing zoning certificates," and "acting on all applications . . . within the specified time." *See id.* § 1133.05 (cleaned up). This list doesn't include providing advisory opinions. And that exclusion from an enumerated list of duties implies that answering such questions is not one of the zoning administrator's obligations. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 107

(2012) ("The expression of one thing implies the exclusion of others."). Indeed, this list reinforces that Betz doesn't have an independent duty to respond to property-use questions outside of "acting on" applications. And the only applications mentioned in the Code are for zoning certificates, stays, variances, conditional-use permits, amendments, and appeals. *See id.* §§ 1127.04 (stay), 1127.06 (appeal and variance), 1129.02 (conditional-use permit), 1131.04 (map amendment), 1131.05 (text amendment), 1135.03 (zoning certificate). There's no reference to a "use-determination" application.

In sum, the plain meaning of the Code is clear: The zoning administrator need not issue a "use determination." The Code explicitly outlines the zoning administrator's duties and lists no such responsibility. While it mandates that "all questions of interpretation and enforcement" first be presented to Betz, it limits the "procedure for deciding" those questions to what is described in the Code. And the Code doesn't include a "use-determination" process. Thus, we need not address Golf Village's remaining arguments about the Code. *See Salinas v. United States*, 522 U.S. 52, 60 (1997).

Because Golf Village was not entitled to a "use determination," Betz's failure to issue one couldn't possibly have been a deprivation of procedural due process.

2.

Golf Village advances a second procedural-due-process argument. It contends that, regardless of the Code's meaning, the City's "pattern of conduct translates into an informal but established state procedure" that violates due process. Appellant Br. 27 (cleaned up). The "pattern of conduct," Golf Village says, is the "deliberate inaction" of the zoning administrator (i.e., his refusal to issue a "use determination") and the "inaction" of the Board of Zoning Appeals (i.e., the refusal to hear its appeal). *Id.* In Golf Village's eyes, both the zoning administrator and the Board "should have foreseen the need to provide such procedural protections." *Id.* (citing *Zinermon v. Burch*, 494 U.S. 113, 132 (1990)). Because the zoning administrator and Board of Zoning Appeals had "the authority to supply a hearing," Golf Village argues their failure to do so violated due process.

It's true, we've previously suggested that officials might violate due process when they refuse to provide a hearing despite knowing that such procedural protections are vital. *See Wedgewood Ltd. P'ship I v. Twp. of Liberty*, 610 F.3d 340, 355 (6th Cir. 2010). But that doesn't get Golf Village all the way. It must also show that the proposed procedures were necessary. It can't do so here.

Not only does the Code not require the zoning administrator to issue a "use determination." The Code lays out a procedure for precisely what Golf Village seeks: a zone-certificate application. If Golf Village had applied for a certificate, it would have received an answer in thirty days. And any denial could have been immediately appealed to the Board. Golf Village can't complain about due process when it didn't use the more-than-adequate procedures already available to it. *Cf. Quinn v. Shirey*, 293 F.3d 315, 321–22 (6th Cir. 2002).

Golf Village resists this conclusion. It suggests that it didn't need to pursue a zoning-certificate application because, by its lights, Betz had already made up his mind. Appellant Br. 29. Betz testified that he would deny a zoning-certificate application if the proposed use was not permitted by the development plan. And as he stated in his email, a residential hotel was, "in [the] Staff's opinion," not permitted. R. 62-2, Pg. ID 763. Based on this evidence, Golf Village argues that requiring it to file a zoning-certificate application is tantamount to imposing an exhaustion requirement, which is not typically required in the procedural-due-process context.

We disagree that filing an application would impose an exhaustion requirement. Rather, it would provide the City a chance to explain its position. Betz might even have changed his mind after seeing a complete application. But we don't know. Golf Village never applied. That alone distinguishes this dispute from the cases Golf Village cites. In each of those cases, the plaintiff had either applied with the relevant administrative body or that body had taken an affirmative action the court could analyze. *See Moore v. Hiram Twp.*, 988 F.3d 353, 356 (6th Cir. 2021); *Nasierowski Bros. Inv. Co. v. Sterling Heights*, 949 F.2d 890, 893 (6th Cir. 1991); *Wilkerson v. Johnson*, 699 F.2d 325, 327 (6th Cir. 1983). Here, in contrast, Golf Village alleges delay and inaction for a procedure that neither the Code nor due process requires. Rather than follow the established procedure, Golf Village headed straight to court. But it can't short-circuit the process like that. If Golf Village had its way, we'd effectively have to commandeer local

governments and decide zoning disputes before the government even has a chance to weigh in. Federalism and comity demand otherwise.

Suffice to say, a zoning-certificate application could have cured Golf Village's alleged injuries. Indeed, it would have provided it with the "use determination" it sought, and the denial of an application would have been appealable. That is all procedural due process demands.

B.

To prevail on the substantive-due-process claim, Golf Village must show that (1) it has a constitutionally protected interest and (2) the City deprived it of that interest "through arbitrary and capricious action." *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 573 (6th Cir. 2008) (quoting *Tri-Corp. Mgmt. Co. v. Praznik,* 33 F. App'x 742, 747 (6th Cir. 2002)). In a prior appeal, we held that Golf Village has a constitutionally protected interest in building a residential hotel. So only the second element is at issue.

Arbitrary-and-capricious review is a well-known concept to those familiar with administrative law. But don't be fooled. The standard is much stricter when evaluating a substantive-due-process challenge to a zoning decision. Indeed, the scope of review is "extremely narrow" in this context. *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1221 (6th Cir. 1992). The plaintiff must show "that there is no rational basis" for the decision. *Id.* (quoting *Stevens v. Hunt*, 646 F.2d 1168, 1170 (6th Cir. 1981)). Courts have understood that to mean the irrationality is so extreme that it "shocks the conscience." *Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014). In other words, the government's actions must be "so 'brutal' and 'offensive' that [they do] not comport with traditional ideas of fair play and decency." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998) (quoting *Breithaupt v. Abram*, 352 U.S. 432, 435 (1957)). To say the least, it's a tough test.

The quintessential example of "conscience-shocking" behavior arose in the physical-force context: A police officer directed a doctor to pump a suspect's stomach to obtain illicit drugs as evidence. *Rochin v. California*, 342 U.S. 165, 172–73 (1952). But zoning administrators don't pump stomachs. So perhaps it's not surprising there are very few zoning cases that meet this mark. That's not to say it's impossible. We have sent the question to a jury

when the government prosecuted a plaintiff for not having a land permit even though the prosecutor knew a permit had run with the land. *Paterek*, 801 F.3d at 648–49. And we have noted that an ordinance requiring homeowners to mow large swaths of land entirely unrelated to their residences might pass the test. *See Shoemaker v. City of Howell*, 795 F.3d 553, 567 (6th Cir. 2015).

With this high bar in mind, we turn to Golf Village's claim. Golf Village argues that the City violated substantive due process in three ways: (1) by refusing to issue a "use determination"; (2) by deciding a residential hotel was not a permitted use; and (3) by delaying and eventually denying that a residential hotel is a permitted use. But none of these actions are "so shocking as to shake the foundations of this country." *EJS Props.*, 698 F.3d at 862. Indeed, each of these decisions is rational.

First, we consider Betz's refusal to issue a "use determination." This decision had a rational basis. As Betz explained in his letter, the problem with Golf Village's request is that it forces him to "opin[e] on the application" of the Code "without the benefit of a full and complete application." R. 60-3, Pg. ID 537. Betz didn't only explain his reasoning; he suggested a path forward by directing Golf Village to file a zoning-certificate application. Had Golf Village done so, it would have received an appealable decision within thirty days. The fact Betz often gave informal advice about permitted uses doesn't suggest he was motivated by animus or that his refusal was irrational. It simply suggests he didn't want to bind himself without the benefit of complete information. That makes complete sense.

Second, Golf Village alleges that Betz decided the residential hotel was a prohibited use. Golf Village doesn't specify when this decision was made. Presumably it's the email Betz wrote saying "in [the] Staff's opinion," the residential hotel does not "fall within the allowed zoning." R. 62-2, Pg. ID 763. But this too doesn't rattle the conscience. At most, it's an erroneous interpretation of the Code. That can't be enough to violate substantive due process. Otherwise, zoning administrators would be on the hook for every wrong interpretation they make.

Third, any putative delay from these decisions does not shock the conscience. In fact, there's no indication that the City dragged its feet in any way. Rather, it was Golf Village that

waited two years to request a "use determination" after Betz provided the informal advice in his email. Once Golf Village requested a "use determination" in its letter, Betz responded in a little over a month. That's lightning speed when it comes to bureaucracy.

Golf Village raises a slew of other allegations. It suggests the City treated it differently than other similarly situated businesses. It also argues that Betz's reasons for denying the application were pretextual and points to evidence that Betz thought its developments were poorly built. Sure, these allegations suggest some questionable behavior. But a party doesn't suffer a constitutional deprivation every time it is "subject to the petty harassment of a state agent." *EJS Props.*, 698 F.3d at 862 (citation omitted). Substantive due process requires much more than that. And Golf Village has simply not met that high bar.

\* \* \*

We affirm.